McCORMICK, Plaintiff In Error, v. CITY OF ST. LOUIS.

In Banc, December 21, 1901.

1. **Contract: SETTLEMENT: ARBITRATOR: CORRUPT DECISION: COURT'S INTERFERENCE: CITY IMPROVEMENTS.** Where it is provided by a contract between a contractor and a city, for the doing of certain excavation, etc., that, "to prevent all disputes and litigation, the city's commissioner shall determine, in all cases, the amount of the several kinds of work, which are to be paid for under the contract, and that he shall decide all questions which may arise relative to the execution of the contract, on the part of the contractor, and that his estimates shall be final and conclusive," the court will not set aside the award of the commissioner unless it is shown that he has acted corruptly, or in a grossly partial way, or in misapprehension or ignorance of the facts.

    *Held,* by VALLIANT, J., in separate opinion, that as to those matters left to the decision of the commissioner under this contract, his decision is final, but that it does not constitute him a judge to construe the contract, nor was it final as to the extra work not embraced within the contract.

2. ———: ———: ———: ———: EVIDENCE OF FRAUD. And where it affirmatively appears that, at the time of making up his tabulated

McCormick v. City of St. Louis.

estimates of the work done, every item in the account sued on was presented by the contractor to him and urged as proper for allowance, but was nevertheless disallowed by him, it can not be said that his award was made in ignorance of the facts, or that he overlooked any part of the work done.

3. ———: ———: ———: ———: EXTRAS: NOT INCLUDED IN ESTIMATES. And where the contractor receives payment of the amount awarded him, he can not maintain claim for the items of his account on the ground that they were for extras ordered by the commissioner, which were omitted from his tabulated statement, and on the further ground that the city, in paying for the items included in the award, paid for only what was conceded to be due and what it was bound to pay regardless of the justice of the claims for the extras. But the commissioner's estimates must be regarded, as the contract made them, final and conclusive, if the items of the work called extras were presented to him for consideration, and disallowed, and he was not guilty of any fraud.

4. ———: ———: ACCEPTANCE: ACCOUNT STATED. And where in such case the contractor has received full payment upon the basis of the commissioner's award, and has receipted in full for all claims under his contract, and still holds and retains the money, he gives to that award the force and effect of an account stated, settled and paid for. And such acceptance precludes him from showing that certain items of work done by him were omitted from the commissioner's estimates or overlooked by him.

Held, by VALLIANT, J., dissenting, that an account stated is the result of a contract, the consideration for which is the existence of an unliquidated or disputed claim arising out of a previous transaction between the parties. It is itself a new contract between them, and requires an independent consideration to support it, and involves a concession on one side or both, of points in dispute. When it involves the yielding of a legal claim, it takes the nature of an accord and satisfaction, which to be binding must be advantageous to the creditor, who must receive from it a distinct benefit which he otherwise would not have. And, hence, in this case, which is simply that of a debtor who has paid a part of his debt and obtained a receipt for the whole of it, or to put it differently, the city has witheld the payment of what is acknowledged to be due until it could force the contractor into giving it a receipt for what is in dispute, there was no account stated, no accord and satisfaction, and, hence, that receipt should not preclude him from receiving pay for the extra work done.

McCormick v. City of St. Louis.

5. ——: ——: FORCED ACCEPTANCE. Force or duress may be pleaded or shown to avoid the effect of a settlement made under its influence, but to be available it must be shown that the party benefited thereby constrained or forced the action of the injured party. Threatened financial disaster if he did not get the money admitted to be due him, can not be held to be such force or duress for the giving by him of a receipt in full for all money due him under a contract, although he gives such receipt under protest and notice that he will sue for the balance which he claims is due and remains unpaid.

6. ——: ——: ACCEPTANCE: PROTEST. Where one party to a contract tenders a definite sum of money to the other, the amount due thereunder being in dispute, upon condition that the other accept it in full discharge of his entire demand, and the other accepts it, although protesting against the correctness of the proposed settlement and giving notice that he will still insist upon the balance, the acceptance of the amount tendered will operate as an accord and satisfaction, which no amount of protest will destroy or alter.

7. ——: ——: ——: CONSIDERATION. The right of either party to refuse to adjust and finally settle an account until his estimate of its correctness is accepted by the other, is itself a consideration for any settlement effected.

8. Reference: LONG ACCOUNT: GUIDE. In determining whether or not a reference should be awarded on the ground that a long account is involved, the court should look to the pleadings, and if, by assuming that the accounts and issues may take the widest latitude embraced within the pleadings, it is apparent the reference should be allowed, it should be ordered. Nor is such reference error because the investigation before the referee is cut short by a showing that the items sued for were embraced within an accepted settlement.

9. Evidence: REJECTION: PERTINENCY MUST BE SHOWN. The action of a trial court in refusing testimony offered will be reviewed on appeal only when the bill of exceptions is made to show what the appellant expected to prove by it, or unless the question itself is such as to indicate what the answer would be. Otherwise, the appellate court can not determine its materiality, but must simply conjecture it.

Error to St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*Leverett Bell* and *Thos. S. Meng* for plaintiff in error.

(1)    The estimates and decisions of the water commissioner of St. Louis, in evidence in this cause, were not final and conclusive as to the work and material embraced in this action, and did not in any sense constitute accounts stated between the parties, and it was error to hold that, upon the pleadings and evidence, plaintiff was not entitled to recover. Lewis v. Railroad, 49 Fed. Rep. 710; Pollman v. St. Louis, 145 Mo. 651; Williams v. Railroad, 112 Mo. 463; s. c., 153 Mo. 487; Jemmison v. Gray, 29 Iowa, 550; Railroad v. Henry, 65 Tex. 691; Burke v. N. Y., 40 N. Y. Sup. 82; Railroad v. Mills, 91 Va. 641; s. c., 90 Va. 523.    (2) The receipts of plaintiff, pleaded in the answer and given in evidence, are not a bar to this action.    Riley v. Kershaw, 52 Mo. 226; Fuller v. Kemp, 20 L. R. A. 785; Wilson v. Palo Alto, 65 Iowa 24; Bridge Co. v. Murphy, 13 Kan. 40; Bright v. Coffman, 15 Ind. 371; Railroad v. Clark, 92 Fed. Rep. 969.

*B. Schnurmacher* and *Chas. Claflin Allen* for defendant in error.

(1) The case was properly referred by the lower court. The two counts of plaintiff's petition contained ten distinct items or matters of charge, while the answers set forth forty-six separate items contained in the water commissioner's final estimate, thus making together fifty-six items requiring examination and investigation, irrespective of payments made from time to time as the work progressed.    The answer contained a general denial to each count of the petition, thus putting in issue each of the ten items of the petition.    Ittner v. Exposition Co., 97 Mo. 568; Briscoe v. Kinealy, 8 Mo. App. 76; Francisco v. Rowland, 14 Mo. App. 600.    (2) Where a reference is justifiable upon the pleadings, the mere fact that subsequently the proceedings upon a hearing are so shaped as to supersede, to some extent, the necessity of a long examination

of the accounts, does not make the order of reference erroneous. Father Mathew's Society v. Fitzwilliams, 84 Mo. 406; Johnson v. Blell, 61 Mo. App. 37. (3) No exception was saved to the ruling of the referee in sustaining an objection to the question which it is now claimed amounted to an exclusion of evidence. Exceptions must be saved at the time, when made by the referee, as upon a trial before the court. To except for the first time in exceptions to the referee's report, is not sufficient. Hill v. Bailey, 8 Mo. App. 85; s. c., 76 Mo. 454; Shaler v. Van Warmer, 33 Mo. 386; Bray v. Kremp, 113 Me. 552; Smith v. Dunklin Co., 83 Mo. 195; R. S. 1889, sec. 2152. (4) The objection was insufficient in not clearly showing what plaintiff expected to prove by the question which was excluded, so that the trial court, or the appellate court, might judge of its materiality, as well as its admissibility, the question itself not indicating what the answer would have been and what appellant desired to prove. Plaintiff having testified to the alleged demands of the water commissioner for money, was merely asked by counsel to "state what occurred." State ex rel. v. Leland, 82 Mo. 260. (5) The final estimates and certificates of the water commissioner, not having been successfully assailed for fraud, were conclusive and binding upon plaintiff and defendant, and amounted to accounts stated and settled. Williams v. Railroad, 112 Mo. 463; Lewis v. Railroad, 49 Fed. 708; St. Joseph Iron Co. v. Halverson, 48 Mo. App. 383; Marmon v. Waller, 53 Mo. App. 610; Holmes v. Richet, 56 Cal. 307. (6) The final receipts, acknowledging payment in full of all amounts due plaintiff from the city, having been made by plaintiff, as he admits, with a full understanding of all the facts, amount to releases, and are a bar to any action at law by him until set aside by a court of equity. Nor will it avail plaintiff to say that he protested while accepting the money. It was tendered him in full and he was bound to accept it upon that condition or refuse it altogether. Pollman Coal Co. v. St. Louis, 145 Mo. 651; Adams v. Helm, 55

Mo. 468; Perkins v. Headley, 49 Mo. App. 556; Och v. Railroad, 130 Mo. 27; Hancock v. Blackwell, 139 Mo. 440; Grumley v. Webb, 48 Mo. 562.

ROBINSON, J.—This is a suit against the defendant city of St. Louis, to recover an alleged balance of $22,323.49, composed in the main of claims for extra work and material furnished by plaintiff in driving and lining up what is termed in the contracts between the plaintiff and defendant, of an inlet tunnel and tower, at the Chain of Rocks, under the Mississippi river, to be used in connection with the city's waterworks. For a fuller statement and history of the case we have adopted, in the main, that furnished by counsel for respondent as follows:

The amended petition on which the case was tried is in two counts. In the first count plaintiff alleges that on December 23, 1889, he entered into a contract with the city, known as contract No. 2474, for the driving and lining of an inlet tunnel at the Chain of Rocks, the tunnel being a part of the waterworks system of the city. That by the terms of the contract the city's water commissioner was empowered to make and to direct the making of alterations in the work, either before or after its commencement, and that if changes were made, the city was to pay plaintiff a fair and reasonable price for any additional work thus occasioned. That during the execution of the work the water commissioner did require changes, which compelled plaintiff to excavate and move 2,401 cubic yards of material from the tunnel, at an increased cost to him of $6.75 per cubic yard, or an aggregate cost of $16,-206.75, on account of which he received $7,257.20, leaving still due a balance of $8,949.55. That he also excavated 451 cubic yards of rock at the tunnel, and constructed 122.5 cubic yards of brick masonry therein, which brick masonry defendant refused to measure and refused to pay for, and that under the terms of the contract plaintiff is entitled to $1,592.50 for the

masonry, and to $3,157 for the excavation, making together the sum of $4,749.57. This count of the petition also alleges that under the contract the water commissioner, upon the completion of the work, was required to cause a final estimate to be made of the total amount of the work, according to the terms and prices mentioned in the contract, and that after deducting all sums previously paid, or rightfully retained under the contract, the commissioner was to certify the balances as due the plaintiff from the city. That the water commissioner did not make the measurements nor allow the compensation to which plaintiff claims to be entitled, although requested by him so to do, nor did he, upon the completion of the work, make a determination of the respective quantities of the work claimed by plaintiff to have been executed, which failure and neglect of the commissioner it is alleged was fraudulent, in bad faith and collusive with defendant. It is also averred that in reference to these matters the commissioner acted dishonestly and corruptly. Judgment is asked on this count for $13,699.05.

The second count pleads that on December 23, 1889, plaintiff entered into contract No. 2475 with the city for the building of an inlet tower at the Chain of Rocks, and that plaintiff furnished a large amount of extra work and extra materials in the execution of this contract, at the directions of the defendant. It is charged that the following work done, and the following materials furnished by him in connection with this work, have not been paid for:

1. Repairing and scraping the inlet tower gates, "supplied by plaintiff in a defective condition" .......................... $ 757.26

2. Cutting granite gateways in the inlet tower, and blacksmithing, and iron furnished for same ....................$208.04
   On which plaintiff pleads he received.... 97.28

Vol 166 mo—21

| | |
|---|---:|
| And claims to be entitled to a balance of. | $ 128.76 |

(Which balance should, clearly, have been
stated to be $110.76.)

3. Iron work 4874 lbs. at 10c per lb......$487.40
   On which plaintiff pleads he received.. 380.98

| | |
|---|---:|
| And claims to be entitled to a balance of. | $ 106.42 |
| 4. For one cofferdam, which plaintiff claims to have had the right to remove upon the completion of the work, but which he avers he left at defendant's request, as a protection to the inlet tower. | 3,500.00 |
| 5. 400 cubic yards of rip-rap, in connection with the cofferdam............. | 1,000.00 |
| 6. 50 tons of pig iron................ | 750.00 |
| 7. For 24 cubic yards of rock excavation in the shaft of the inlet tower, at $100 per cubic yard ................... | 2,400.00 |

The same allegations are then made respecting the duty of the water commissioner to make or cause a final estimate to be made; his failure to allow for the foregoing items, and that such failure was due to fraud, bad faith, and collusion with defendant, and that the commissioner acted dishonestly and corruptly. Judgment on this count is asked in the sum of $8,624.44.

The answer to the first count admits that defendant is a municipal corporation; admits that plaintiff entered upon the performance of said contract, and completed the same, but denies all other allegations in said count of the petition.

The answer thereupon avers that in the contract it was provided as follows:

"To prevent all disputes and litigation it is agreed by and between the parties to this contract, that the water commissioner shall, in all cases, determine the amount of the sev-

eral kinds of work which are to be paid for under this contract; and he shall decide all questions which may arise relative to the execution of this contract, on the part of the contractor, and his estimates and decisions shall be final and conclusive."

That on October 29, 1891, the water commissioner did finally estimate and decide the amount of work done by plaintiff under said contract No. 2474, and under ordinance 15024, to amount to $89,197.55, including all extras, and after deducting therefrom $80,092.94, previously paid plaintiff, certified that there was due plaintiff, upon final settlement, a balance of $9,104.61. That on October 30, 1891, the president of the Board of Public Improvements approved said final estimate, and certified the same to be correct; that on the same day said claim was audited for the said sum of $9,104.61 by the city auditor, in full payment of all claims against the city, under contract No. 2474 and ordinance 15024, and that thereafter the city treasurer paid the auditor's warrant. An itemized account is made a part of the answer, showing in detail what work and materials the water commissioner allowed, and how he reached the balance to which he certified.

The answer also avers that on October 29, 1891, the water commissioner made his final estimate and decision of the amount of work done under said contract No. 2474 and under ordinance 15297, finding said work, with all extras, to amount to $17,810.65; and after deducting therefrom $9,996.00 previously paid, certified to a balance of $7,814.65, as the amount due plaintiff upon a final estimate under said contract and ordinance. That on October 30, 1891, the president of the Board of Public Improvements approved said certificate, and on same day it was audited for said amount of $7,814.65 in favor of plaintiff, who received from the auditor a warrant upon the city treasurer in full payment of said final estimate, and thereafter the warrant was paid to plaintiff by the treas-

urcr.    An itemized statement is again set forth in the answer, showing how said balance was reached.

The answer then proceeds as follows:

"That in this manner, prior to the institution of this suit, plaintiff and defendant did agree upon the amount due the plaintiff under said contract No. 2474, and said ordinance No. 15024 and 15297, and plaintiff did accept, and defendant did pay the said sums of $9,104.61 and $7,814.65 in full discharge and payment of all liability of the defendant in any manner arising out of said contract and said ordinances."

The answer to the second count of the petition follows the lines of the foregoing with respect to the first count, and pleads that after the completion of contract No. 2475, and on January 1, 1892, the water commissioner did estimate and decide the amount due plaintiff, including extras, to be the sum of $73,279.08; that after deducting previous payments aggregating $58,623.27 the commissioner certified to a balance of $14,655.81 as the amount in full due plaintiff under this contract.    That on January 29, 1892, the president of the Board of Public Improvements approved said final estimate as correct, and in full payment of all work done on the inlet tower and connections.    That on February 3, 1892, said claim, so certified, was audited by the city auditor, who drew his warrant in the sum of $14,655.81 on the city treasurer, in favor of plaintiff, in full payment of said final estimate, which warrant plaintiff received and accepted as such full payment, and that thereafter the amount of said warrant was paid to him by the city treasurer.    All of which facts are pleaded as an accounting between plaintiff and defendant, and as a release and discharge.

To the answer plaintiff filed a reply, the substance of which is that the sum of $8,941.55 referred to in the first count of the petition, represents the increased cost of work under contract 2474, occasioned by alterations made by the water commissioner, or by defendant, and that no part thereof

was allowed or paid plaintiff, and that the same was excluded from the two estimates of the commissioner set forth in the answer, the commissioner having refused to consider or to allow the same. That the sum of $4,749.50, also mentioned in the first count, is for items of repair and materials furnished under said contract 2474, and which items the commissioner absolutely and arbitrarily excluded from his estimates, and refused to consider. As to the sum of $8,624.44, sought to be recovered in the second count, the reply avers also that the water commissioner refused to consider the same; that it was not embraced in the settlements pleaded in the answer, and that the payments made by defendant to plaintiff did not cover the same. The reply then reiterates the charge that the decisions of the water commissioner were false, fraudulent and void, and that he refused to give any hearing or consideration to the items of indebtedness referred to in the petition, and refused to listen to any testimony or evidence concerning the same, and excluded the same from his estimates.

On May 20, 1892, on motion of defendant, the case was referred to Arba N. Crane, Esq., as referee to try all the issues. To this action plaintiff excepted. The motion to refer was based on the ground that the trial of the facts would involve the examination of a long account, involving many items, and on the further ground that it would be necessary to take an account of the work and labor done and materials furnished, and of the payments made, before any judgment could be rendered.

The referee proceeded to hear the evidence and on April 23, 1894, filed his report recommending a judgment for defendants. To this report plaintiff filed his exceptions, which being overruled by the trial court, judgment was entered for defendant, and the case, after the usual steps taken by plaintiff, has been brought to this court for review.

Appellants assignment of errors are: first, the action of the trial court in sending the case to the referee; second, the

action of the referee in excluding testimony offered; and, third, the action of the referee and court, in holding that the estimates and decisions of the water commissioner were final and conclusive as to the work and material embraced in the accounts in suit.

As the questions involved in the discussion and disposition of appellant's last assignment of error goes to the very vitals of the case, we will consider it first.

In the outset, however, it may be well to say, that from a careful reading of the record, nothing is found showing or tending to show, as charged in appellant's petition, that the water commissioner, chosen to make the estimates and determine the amounts of the several kinds of work which were to be paid for under the contract, was guilty of any corruption, fraud, partiality or misconduct, whatever, that would warrant the court's interference to set aside his estimates for those considerations, if proceedings to that end had been properly directed.

And again, it may be further said that, while the appellant does not challenge the validity of the clause of the contract, making the final estimate and decision of the water commissioner binding and conclusive upon both of the parties to the contract as to the amount and character of the work and material to be paid for thereunder, yet by a process of reasoning not fully appreciated, he seeks to avoid the force of the estimates made by the commissioner as wanting in application to the present suit, because of the fact that the items of the account in this suit are not shown in the commissioner's final estimate; and by a similar course of reasoning appellant also concludes that the estimate made by the commissioner do not constitute accounts stated, as to the work and material embraced in this action, that his receipt against the one, should bar his right to recover upon the other.

The contention of the respondent, on the other hand, is, that the final estimates submitted by the water commissioner,

of the work done and materials furnished under the several contracts between plaintiff and the defendant, by reason of the provisions above quoted, are binding and conclusive upon both plaintiff and defendant; and further, that, regardless of the provision of the contract making these estimates binding and conclusive between the parties, the acceptance by plaintiff of the final estimates as made, and the payments on account thereof by defendant, gave to them all the force and effect of account stated, settled and paid for; and that as there was no evidence surcharging or falsifying any of the items upon which the settlements and payments were reached and made, the plaintiff is wholly without standing under the proceedings as instituted.

Without going into a discussion of the question as to the conditions under which the courts have power and authority to set aside awards or estimates, made by a chosen third party under the terms of a contract (such as is found in the agreement between plaintiff and defendant herein), suffice it to say, the court's authority is exercised in such cases only, when it is shown that the arbitrator, in the exercise of the authority conferred upon him by the contract, has acted corruptly, grossly impartial, or in ignorance of or in misapprehension of facts, and unless one of these conditions is alleged and shown, under a petition properly framed to raise that issue, the courts will not interfere to nullify the action of the arbitrator done in obedience to the mutual agreement of the contracting parties; or what will amount to the same, act in disregard of the estimates. [Williams v. Railroad, 112 Mo. 463; Lewis v. Railroad, 49 Fed. Rep. 708; St. Joseph Iron Co. v. Halverson, 48 Mo. App. 383; Holmes v. Richet, 56 Cal. 307.]

As said before the testimony in this case not only wholly fails to show that the water commissioner was guilty of the slightest fraud in the matter of making up the final estimates upon which plaintiff and defendant were to and did ultimately settle their accounts; but it is also affirmatively shown, by the

plaintiff himself, that instead of the water commissioner acting in misapprehension of or in ignorance of the facts at the time of making up the final estimates, the entire situation was perfectly familiar to him, and that every item now appearing in the account sued on, was presented by plaintiff and urged upon the commissioner as proper items to appear in his estimate for allowance and settlement, but were disallowed or rejected by him as improper and unfounded.

Unless the clause of the contract between plaintiff and defendant, to the effect that the water commissioner shall decide all questions which may arise relating to the execution thereof, as well as to determine the amount of the several kinds of work which are to be paid for thereunder is to be robbed of all substance and meaning; or the court is willing to reverse itself and declare such provisions in contracts contrary to the policy of the law, the trial court, under the fact reported to it by the referee, and as disclosed by the plaintiff's own testimony, could not have done otherwise than confirm the report of the referee recommending judgment in favor of defendant.

But, says the appellant, this case differs from the class of cases cited by respondent wherein the final estimates made by a chosen third party have been held a bar to the prosecution for further and additional claims under the contract of employment, in this, that here the items for which plaintiff claims compensation do not appear at all in the estimates which are claimed to be accounts stated, and were not allowed in the commissioner's final estimates, but that the estimates contains only undisputed items due by the defendant to plaintiff on account of the work and labor done and performed and the material furnished by plaintiff for the defendant under his said contracts with the city, and that in paying to plaintiff on those estimates the city only did its duty, and paid what was conceded to be due, and what it was bound to do regardless of

the question of what it thought of the justice of the items claimed in the present suit.

This seems to be begging the very question at issue. "To prevent all disputes and litigation," just such as has here arisen, it was agreed by and between the plaintiff and defendant that the water commissioner should in all cases determine the amount of the several kinds of work which were to be paid for under this said contract, and "that his estimates shall be final and conclusive." The city paid to plaintiff the sums received by him on his different contracts, not because it approved, necessarily, as correct every item of the final estimate made by the water commissioner, but because under its contract with defendant, those estimates determined the amounts of the several kinds of work which it was to pay for, whether it gave its approval to the amount of every particular item of the estimates or not. In paying the amounts designated in the estimates, defendant paid what was conceded to be justly due, it is true, but not necessarily because its estimates of the work, coincided with that of the commissioner, or because the commissioner's estimates differed from those suggested by the plaintiff, but because the contract designated the commissioner's estimates as conclusive and final. In paying the amount due according to the commissioner's estimate, the defendant ought not to be said to have paid what was concededly due under the contract more than the plaintiff ought to be said to accepted it as a full, accurate and complete estimate when upon it he drew his money and receipted against all further demand. Whether either, neither or both parties to the contract at that time conceded the absolute correctness of the commissioner's estimates, both agreed to be and were bound thereby, and as between them it is conclusive in the absence of a showing of fraud, or gross error that would amount to fraud, against the rights of one or both of the parties, or a mistake growing out of some oversight or misconception of the facts.

There is no occasion for the consideration or discussion of the question as to the effect of a partial payment by a debtor, who has obtained a receipt as for the whole of his debt; or of the effect of a debtor withholding the payment of what he acknowledges to be due until he could force his creditor into giving him a receipt for what is in dispute. Those questions do not properly arise under the facts of this case. And while it may be said to be true that every item of plaintiff's present account sued upon, does not appear in the final estimates of the water commissioner furnished for the adjustment and settlement of the accounts between plaintiff and defendant, it is equally as apparent from the record, that every item of work done in and about the construction of the inlet tunnel and tower by plaintiff under the different contracts, was presented to the consideration of the commissioner, whose duty it was to determine the amount of the several kinds of work which was to be paid for, and that his final estimates were made up, not in ignorance of the particular items of work sought now to be established, but in the full light of all the facts, and that all items not included in his estimates were disallowed by him as unfounded.

If the estimates, duly made out and acted upon by both parties to the contract, is to be wholly ignored and set aside simply because one of the parties to the contract considers the estimate in some particular or detail inaccurate or incomplete (in the light of the facts as he alleges and offers to show them to exist) then the award, or the estimates of the chosen arbitrator, is a useless ceremony, failing in the very purpose the parties to the contract had in view, to-wit, the prevention of disputes and litigation between themselves, after the work under the contract had been fully completed.

The cases cited by appellant, where relief has been granted by the courts to complaining parties, under contracts similarly worded to these between plaintiff and defendant, are where either fraud upon the part of the chosen arbitrator, or conduct

which amounts to such in its effect upon one of the parties to the contract, had been alleged and shown, or where the arbitrator through oversight or mistake has failed to measure or to take into account some particular part of the work that should have been considered in the estimate.   Those cases all are bottomed upon the broad proposition that fraud vitiates everything tainted by its touch, in the one case; and in the other, that an oversight on the part of the arbitrator necessarily excludes the possibility of a determination by him of the particular items alleged to have been omitted from the estimates. Unless a particular piece or kind of work is brought to the view of the arbitrator (the water commissioner in this case), he of course could not determine its amount, and that each party to a contract is entitled to have, and where a settlement is made, in its absence, courts will furnish the needed relief, not by setting aside the arbitrator's estimate, and the settlement made thereon, but by an ascertainment of the amount of the work overlooked by the arbitrator when his estimate was made, and determine its value under the terms of the contract, as the arbitrator should have done.   Neither fraud nor mistake of the character above mentioned, appear in the record of this case.

But independent of the question whether or not plaintiff is to be held bound by the amount of the final estimates of the water commissioner under the terms of the contract between himself and defendant, authorizing the work, as also the further question, whether or not the particular items of the accounts in suit did or did not appear in or were, or were not, taken into account in the estimates so furnished by the water commissioner, or whether the estimates, as made out, were correct or incorrect, and if incorrect, whether it was the result of miscalculation, or the direct fraud of the commissioner or of an oversight by him in failing to calculate the designated items of the present suit, the fact is, that plaintiff finally acted upon the estimates, received the warrants of the city based upon the

estimates, and receipted to the city in full for all claims under the several contracts, and still holds and retains the money. Thus giving to them the force and effect of accounts stated, settled and paid for.    [McCormick v. Transit Ry. Co., 154 Mo. 191; Pollman Coal Co. v. St. Louis, 145 Mo. 651; Adams v. Helm, 55 Mo. 468.]

If the estimates of the water commissioner were not sufficient to conclude both plaintiff and defendant, as to the amount of the indebtedness and liability under the several contracts, on account of the conduct of the water commissioner in overlooking or fraudulently excluding certain items of work (now and at all times contended for by plaintiff as proper items for allowance), certainly those reasons could not be effective to prevent the use of the estimates, as statements of the accounts between plaintiff and defendant of the value of the several kinds of work done and performed by plaintiff not paid for, which defendant acknowledged its willingness to pay; nor would the fact of the water commissioner's fraud or mistake in the matter of the preparation of his estimates in the first instance (if such have been shown), affect a settlement made upon such estimates, and receipts given in full satisfaction of all claims due plaintiff from the defendant upon the basis of the figures of the estimates where the knowledge of the errors in the estimates was known to the party alleged to have been aggrieved by the settlement.

The final agreement between plaintiff and defendant to settle, and the settlement effected on the basis of the figures of the estimates made by the commissioner, constitute the estimates an account stated, without regard to the question of how they are to be considered under the terms of the original contracts under which the work was done, and the estimates made.    [McCormick v. Transit Ry. Co., 154 Mo. 191.]

But plaintiff, to further defeat the effect of the estimates as an account stated, says that he was forced to accept the figures of the estimates, and to receipt against them in full satisfac-

tion for all claims against the city growing out of work and labor done by him in and about the construction of the tunnel and tower, on account of a financial disaster that threatened him if he did not get the money that was due him at that particular time; and in the second place, that in accepting the sum tendered by the city in payment of its claim, he did so under protest, and notified the city at the time that he would still insist upon the balance as claimed by him to be due under the contract; and further that defendant in paying to him the amount of the items of the estimates, only paid what is acknowledged to be due, and that the acceptance of same by him and the giving of his receipt therefor did not under the circumstance operate to render the estimates an account stated, and that no consideration was paid or concession made for plaintiff's receipts.

That force or duress may be pleaded or shown to avoid the effect of, or to have annulled a receipt under its influence, is unquestionably true, but to make the force or constraint upon a party causing his action, availing to him as a defense against the consequences thereof, it should be shown that the party benefited thereby or some one with his knowledge and approval, in some manner or by some means constrained or forced the action of the injured party.

The thing that forced plaintiff to accept the terms of settlement offered by the defendant, in this case, was not in anywise the result of the action or conduct of defendant or any of its agents, but as shown by plaintiff himself, was the result of circumstances and conditions over which the defendant city had no control, and with which it had no concern or connection, "his financial necessities." There is nothing in the claim, from a legal point of view, that plaintiff was forced to accept the terms of defendant's offer, and to receipt in full against all claims for work and labor done and performed under the terms of their several contracts. It was his free act, done in the full light of all the facts in the premises, and in the knowledge of

the effect of his act, as is shown from the following extract from his testimony:

In answer to a question by Mr. Marshall, of counsel for the city, plaintiff said: "I saw you several times before the twenty-ninth of January, with reference to this difference between myself and Mr. Holman [the water commissioner]. I undertook to show you that Mr. Holman had not allowed me so much as I thought I was entitled to. I complained of it to you at the time. You told me it was Mr. Holman's department and he was the judge of those things, and you were not. On January 29, 1892, I came to your office in the City Hall in the morning and told you that I needed money that day very badly, and wanted to know of you, Mr. Marshall, if it could be fixed so I could get some money that day. I also told you further that unless I got that money that day my note would go to protest and I should lose quite a large sum of money. . . . I stated that I was in need of money at that time; that any amount would be worth more to me at that time than a larger amount in the future." Further on in the course of his examination plaintiff said: "The only thing that induced me to receipt was the fact that I was compelled to sign the receipt or fail. The city of St. Louis compelled me to take the money; it forced me to do it." Still further along in his testimony the plaintiff said: "I was told that unless I signed the receipt in full the city would not pay me the $9,114.01 or the $7,814.08 or the $14,655.81. I went there and signed those receipts to save myself from ruin, and to take care of my family."

If parties could plead in discharge of their contracts that they were forced into them by reason of some financial strain brought about by their contracts with others, then but few contracts would be worth the paper used to have them evidenced. All compromise agreements are the result of a desire to avert or avoid some threatened or possible embarrassment or inconvenience. Otherwise compromises would never be effected.

The appellant's second suggestion, offered to defeat the effect of his action in receiving the money of defendant and receipting in full for all claims under his contract with the city, that in doing so he protested against the correctness of the estimates, and notified the defendant that he would still insist upon the balance as claimed in his account, it need only be said that when one party to a contract tenders a definite sum of money to the other (where the amount due thereunder is in dispute) upon the condition that the other accept it in full discharge of his entire demand upon the account, and the other accepts it, the acceptance will operate as an accord and satisfaction, as a conclusion of law, the protest of the accepting party to the contrary notwithstanding. One can not at the same time accept and reject a conditional tender. If one accept the tender, the law imposes the condition, and no amount of protest, will destroy its effect. [Adams v. Helm, 55 Mo. 468; Pollman Coal Co. v. St. Louis, 145 Mo. 651; Fuller v. Kemp, 138 N. Y. 231; Potter v. Douglass, 44 Conn. 541.]

Appellant's final suggestion, that as defendant only paid what it acknowledged and conceded to be due, the agreement on his part, evidenced by his receipts in full satisfaction and discharge of all demands, was without consideration, and only operated as a discharge of so much of his claim as was actually paid, and not that part involved in the present suit, is erroneous in this, that he overlooks the fact that the amount due under the several contracts with the defendant city was at all times in dispute, at least in so far as the plaintiff was concerned. Though the city only paid at last what it at all times acknowledged to be due and had expressed its readiness to pay under the terms of the contract (the amount of the commissioner's estimates) it was not bound to pay that until the plaintiff would agree to accept it in full satisfaction of all demands, and this constitutes in law a sufficient consideration to support a settlement made.

Where anything substantial has been done by one party

to a settlement, which in law he was not bound to do, or where one party has abstained from doing, at the request of the other, something which he had the right to do this is a sufficient consideration to support an agreement of settlement. It is not necessary to the validity of a settlement between disputing parties to an account, that it may be pleaded as a bar to future action thereon, that each party must have made some concession in dollars and cents, below what he claimed was rightly due to or owing by him under the account settled.

The right of either party to refuse to adjust and finally settle an account until his estimate of its correctness is accepted by the other, is itself a consideration for any settlement effected.

Returning now to the consideration of appellant's first assignment of error, challenging the action of the trial court in sending the case to a referee over his protest, it is to be borne in mind that in determining the propriety of the court's action in directing the reference, it is not to be considered in the light of the facts as developed upon the hearing, as the trial was actually conducted, but resort must be made to the pleadings, upon which alone the trial court, at the time, had to look for guidance, to determine whether upon the issues as joined, the examination of a long account or accounts, within the meaning of the statute, would be the probable result of the trial. Though in the trial of this case before the referee no examination of long accounts or complicated figures became necessary, and a jury without the least probable confusion could have carried in their minds the detail of all figures offered to the conclusion of the hearing, still by the petition it was disclosed that the items or matters of charges would require investigation and computation, and by the answer filed, each and every item of these accounts were denied, and it was further averred that all of the labor performed by plaintiff and all the materials furnished by him had been settled and adjusted by the water commissioner, who was made arbitrator

between the parties by the terms of their several contracts. The answer then sets forth the several final estimates made by the commissioner embracing altogether forty-six separate items, each of which might have become necessary to investigate had plaintiff been able to furnish sufficient proof of fraud on part of the water commissioner to overcome the effect of the final estimates made by him. The necessity of an examination of a long account was only dispensed with by reason of the shortness or rather the want of plaintiff's proof on the allegation of fraud against the water commissioner, in the matter of the preparation of his estimates.

In determining the question of the propriety of a reference, the trial court must assume that the testimony offered on the disputed account or accounts, will take the fullest latitude embraced within the pleadings, and not the narrow compass of actual facts shown, necessitated by the failure of the complaining party to offer proof on the allegation of his petition or answer. Upon the face of the pleading the order of reference by the trial court in our judgment was warranted. Appellant's complaint in this particular is without merit.

To appellant's final complaint that the referee erred in excluding testimony that the water commissioner had demanded money of plaintiff, while the work for the city under the contracts in question was being done, and the conversation attending such demand, it is to be said in the first place that under the pleadings such testimony was not admissible, and in the second place, that the contention is predicated upon a misapprehension of the record. Though in the petition there is a general charge that the commissioner acted fraudulently and corruptly, no facts are pleaded from which fraud or corruption could be inferred, that the defendant was called upon to deny or that the plaintiff was entitled to offer proof upon if objection was made thereto, and as a consequence its refusal could be no error, if refusal there was. The truth is,

Vol 166 mo—22

however, that plaintiff was allowed to and did testify (as shown by his own printed abstract of the record) that "during the progress of work Holman made requests of me for money early in the summer of 1891."

At this point plaintiff's counsel then asked the further question:

"State what occurred?"

This was objected to by defendant's counsel, and the referee sustained the objection. No exception was saved to this ruling, and no further effort was made by plaintiff's counsel to indicate what he expected would be shown by the answer to the question, to suggest to the referee its materiality or pertinency to the issue involved. The inquiry was abandoned by plaintiff at this point, and thus we are left alone to conjecture, or to the suggestion made by plaintiff's counsel, for the first time in his brief filed herein, to determine the pertinency of the question propounded or the application of the expected answer to the issues before the court.

For aught this court knows, from the record, what occurred after Holman made a request of plaintiff for money in the summer of 1891, might have been wholly immaterial to the issues in the case, as well as the fact that he did make a requisition of plaintiff for money, even if we consider that under the pleadings the question of the commissioner's alleged fraudulent conduct was a proper subject of inquiry. The question itself certainly furnishes no indication as to whether the expected answer would be material or admissible as testimony, and plaintiff offered no suggestion then, that this court can now consider, to determine that question. Appellate courts should never reverse a case for a new trial on account of the simple refusal of the trial court to permit a question to be answered, the materiality of which is purely conjectural, and that might, on a retrial, turn out to be wholly immaterial and incompetent. The action of a trial court in refusing testimony offered will be reviewed by this court on appeal, only when

the bill of exceptions is made to show what the appellant expected to have proven by it, that its materiality or admissibility might be determined here; or unless the question propounded is itself such as to indicate what the answer would be, or what was expected to be shown by it. [State ex rel. Farwell v. Leland, 82 Mo. 260; Aull Savings Bank v. Aull's Admr., 80 Mo. 199.] Neither of which conditions are shown here, and for these reasons this contention will be ruled against appellant. Finding no error in the action of the trial court, its judgment is affirmed.

*Burgess, C. J., Sherwood* and *Gantt, JJ.,* concur; *Valliant* and *Brace, JJ.,* dissent in separate opinion; *Marshall, J.,* not sitting, having formerly been of counsel in the case.

VALLIANT, J. (dissenting).—In the foregoing opinion of the majority of the court, it is held that the clause in the contract making the water commissioner umpire in certain matters renders his decision final on the question in this suit, and that the receiving of the money by the plaintiff on the final estimates given, precludes his recovery. I am compelled to dissent from both of those conclusions. I agree that in those matters left to the decision of the water commissioner by that clause his decision is final, but the clause does not constitute him the judge to construe the contract, or the arbitrator of all the plaintiff's rights under it.

The law on this subject is quite thoroughly discussed and expounded in Williams v. Railroad, 112 Mo. 463, opinion by GANTT, P. J., which is quoted by the referee as authority for his ruling and is mainly relied on by the learned counsel for respondent. That suit grew out of a contract for the construction of a railroad, wherein it was provided: "The work shall be executed under the direction and supervision of the chief engineer of said railway company and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this

contract shall be determined, and whose determination shall be conclusive upon the parties; and who shall have full power to reject or condemn all work or materials which in his or their opinion do not fully conform to the spirit of this agreement; and said chief engineer shall decide every question which can or may arise between the parties, relative to the execution thereof, and his decision shall be binding and final upon both parties." The complaint in that case was that the plaintiff had not been paid for all the work he had done, and that the engineer had rejected and refused to make the estimates called for by the contract, also that there was wrong classification of excavated material. The answer stated that final estimates were made as required and showed what they were. The reply attacked the estimates as false and fraudulent. There were questions in that case growing out of the pleadings,.to which much of the opinion is addressed, but there were also principles of law discussed applicable to the case at bar. It was there decided that whilst the clause of the contract above quoted was valid and binding, yet that it did not confer on the engineer the power to construe the contract, and conclusively bind the plaintiff by his construction.

The court said: "Moreover, plaintiffs were entitled to show, if they could, under either count, that the engineer misconstrued the contract in his classification of the loose-rock clause, and had not measured the work according to contract. An allegation of fraud was not necessary to entitle him to this evidence at this time. Plaintiff claimed and offered to show that the engineer construed hard-pan to be loose rock, only 'when it could not be plowed with a strong ten-inch plow behind a good six mule or horse team.' Plaintiffs insisted that, under this clause, the contract itself fixed the classification of hard-pan as loose rock without reference to the plowing test. We think the plaintiffs are correct in their interpretation of this clause, and, if the engineer did so misconstrue it, he exceeded the power vested in him by the contract, and

there is no principle of law or equity that demands that plaintiffs should submit to a misconstruction of their contract which would result in serious loss to them. . . . It is the province of the courts to construe contracts, and the plaintiff had a right to the construction of the court on this clause."

And in the same opinion it is said: "While the courts with great unanimity sustain stipulations providing that the work shall be done under the direction and supervision of the engineer, and his estimates shall be final and conclusive upon the parties to the contract, they have also concurred in saying that the engineer's estimate may be assailed for fraud, gross error or mistake."

From the decision in the above-named case two propositions appear: first, that the clause constituting the engineer umpire concerning certain matters liable to arise in the execution of the contract was valid and his decisions in reference to the same were final unless successfully attacked for fraud, gross error or mistake; second, his decisions were final only in the matters which by the terms of the contract were submitted to him and which in that case did not include the power to construe the contract.

If we will now turn back to the clause in the contract, in the case at bar, upon which the referee based his ruling, and upon which the circuit court based its judgment, and read it in parallel with the similar clause in the case of Williams v. Railroad, above quoted, we shall see that the authority of the railroad engineer, if not in fact greater, was expressed in more comprehensive language than that of the water commissioner in this case. The water commissioner was empowered to "determine the amount of the several kinds of work which are to be paid for under this contract; and he shall decide all questions which may arise relative to the execution of this contract on the part of the contractor, and his estimates and decisions shall be final and conclusive."

That clause gave the water commissioner full power to

direct how the contract should be executed, that is, how the work should be done, and if a question on that point arose between him and the contractor, the latter had to submit. And when work of the several kinds called for by contract, and for which the contractor was to be paid, was done, the water commissioner was to determine the amount of such work and his determination of that question was conclusive and the contractor had to submit to it, unless he successfully attacked it on the grounds above mentioned. But that is the extent to which the contract clothed the water commissioner with authority to act as umpire. If a question should arise as to whether or not the contractor was entitled, under the contract, to pay for certain kind of work or material furnished, the answer to which depended on a construction of the contract, he would not be bound to submit to the decision of the water commissioner, but would be entitled to the judgment of the court on that question. It appears from the evidence that the inlet tunnel, which is about 1300 feet in length, was to have been constructed on an ascending grade of six inches to the one hundred feet, and in circular form of nine feet two inches in diameter, which would give sufficient inclination towards the west end to cause the water to flow in that direction, and enable the contractor to keep the tunnel free of water by a pump at that end. But after the tunnel had been driven six hundred feet it was discovered that the rock which formed the roof began to dip towards the east, and fearing that it would not be sufficiently thick to constitute a safe roof, if the ascending grade was continued, the grade line was lowered, and the contractor was required by the water commissioner to drive the tunnel on a seven-foot heading for a considerable distance, so as to preserve, for the time being, the inclination towards the west, and then return and take out the remaining two feet. This entailed on the contractor the labor of going over the space twice and greatly increased the cost. This forms one of the chief items of the account sued on.

It appears, also, from the evidence that in the location of the inlet tower through which the water is let into the tunnel, a mistake was made by the defendant's engineers, so that when the contractor came to sink the inlet shaft it was discovered that it did not meet as it was calculated to do, that part of the shaft that had been excavated upward, beginning in the tunnel, and it became necessary to make an extra excavation of twenty-four cubic yards, which the contractor did at a cost of $2,400, and this is one of the items sued for.

It is unnecessary for the purposes of this appeal to discuss the other items embraced in the plaintiff's petition, and these two are mentioned only to illustrate the nature of the plaintiff's case. He contended with the water commissioner that he was entitled, under the contract, to be paid for the extra cost put upon him by the changed grade and the manner in which he was required to perform the work which constituted the first of the two items above mentioned, and that he should be paid for the additional twenty-four cubic yards of excavation to bring the two parts of the inlet shaft together. This was his interpretation of the contract, but the water commissioner interpreted it differently, and decided that he was not entitled to be so paid. The contention on the part of the city is that the water commissioner's decision on that question is final.

From his standpoint as superintendent and chief director of the work, charged by the city with the duty of certifying the amounts to be paid the contractor for the work as it progressed and at its conclusion, it was the duty of the water commissioner to construe the contract, to include in his estimates all that he judged to be proper and exclude all that he judged to be improper, according to the meaning of the contract, as he understood it, but his decision in so far as it was based on his interpretation of the contract was not conclusive on the contractor.

I do not mean now to express any opinion as to whether

or not the plaintiff's construction of the contract in reference to these two items and the other items in .his suit is correct, because that question is not before us, not having been passed upon by the trial court, but I do mean to say that the plaintiff had a right to the judgment of the court upon that question, and was not concluded by the decision of the water commissioner. Under the ruling of the referee, the defendant offered no evidence as to the merits of the plaintiff's case, and therefore what is here said is based on the plaintiff's evidence alone; upon a retrial the defendant will have the privilege to introduce proof on that line. Until these questions, both of law and fact, have been passed on by the trial court, they are original untried questions and not ready for judgment in this court.

The conclusion of the learned referee rested not only on the idea that the decision of the water commissioner was final, but also that the acceptance of the estimates and the receipt of the money called for by them made them accounts stated and as such binding between the parties and not open to attack in the manner offered by the plaintiff.

An account stated is the result of a contract, the consideration for which is the existence of an unliquidated or disputed claim arising out of a previous transaction between the parties. The contract which results in the account stated is itself a new agreement between the parties and requires an independent consideration to support it; it is the meeting of their minds on the unliquidated or disputed claim, involving a yielding or concession upon one side or both touching the points in dispute. When it involves the yielding of a legal claim it takes the nature of accord and satisfaction, whereof it is said: "The accord and satisfaction must be advantageous to the creditor. He must receive from it a distinct benefit, which he otherwise would not have had." [2 Parson on Contracts (8 Ed.), bot. p. 804.]

A transaction in which a creditor consents to receive, as

in full satisfaction of his debt, a less sum than is undisputedly owing and then due, is without consideration and such payment is in law only a partial payment, even though the creditor gives a receipt in full. [Riley v. Kershan, 52 Mo. 224; Willis v. Gammill, 67 Mo. 730; Tucker v. Bartle, 85 Mo. 114.] All these cases are cited and the doctrine reaffirmed in Pollman Coal Co. v. St. Louis, 145 Mo. 551, upon which last case the referee chiefly based his conclusion that these estimates constituted an account stated. That case grew out of contracts with the city for sprinkling its streets, in which it was provided that injuries done to the fire plugs by the plaintiff's employees by their carelessness in handling them when taking water therefrom, should be paid for by plaintiff, and the amount of damages deducted from the estimates of pay due him under the contracts. A claim was made by the street commissioner for damages on this account, the correcness of which the contractor disputed, but in the final estimates the cost of repairs to the fire plugs were put in as debit items of the account against the contractor, and the balance was struck by deducting them from the amount otherwise due him; he received the estimates with the voucher attached upon which he received the money called for by them and receipted the accounts in full. He attempted to avoid the effect of this by pleading in his reply that he was forced to accept what was offered him, because he was in need of the money, and on accepting it protested that the deductions were unjust, and that he was not liable for the cost of the repairs deducted. The defendant demurred to the reply, and the demurrer was sustained by the trial court, and upon appeal that ruling was approved, this court holding that while the city was insisting on its set-off, that fact put the plaintiff's claim sufficiently in dispute, to afford a consideration for the account stated, and that the plaintiff having accepted it, his protest was of no effect.

And we may say here that if in the case at bar there was

a valid account stated between the parties, the fact that when the plaintiff received the money he protested, as his evidence tended to prove he did, would not avoid the effect of the account stated.

But the case at bar differed from the case last cited in this, that here the items for which the plaintiff claims compensation do not appear at all in the estimates which are claimed to be accounts stated; there is no reference to them, and the receipt is in terms only "in full payment of above account." True, in the caption of each the estimate purports to be the final estimate on that work, but the account itself contains only undisputed items of indebtedness of the city to the plaintiff. In the payment of those items the city has paid only what is conceded to have been justly due, regardless of what may be thought of these items now in suit. Supposing, therefore, these items are justly due the plaintiff, what consideration has the city paid, what concession has it made, what has it suffered in consequence of the supposed release of the plaintiff's claim as to these? The condition is simply that of a debtor who has paid a part of his debt, and obtained a receipt for the whole of it, or of one who has withheld the payment of what he acknowledged to be due until he could force his creditor into giving him a receipt for what is in dispute. Pollman Coal Co. v. St. Louis, supra, gives no sanction for calling an estimate and receipt under these circumstances an account stated, and a payment of the disputed claim.

Where, as in the case at bar, a creditor presents an account of several items, some of which are undisputed, and some disputed, and the debtor offers to pay the undisputed items upon condition that the creditor give a receipt for the account in full, including the disputed items, refusing otherwise to pay even that which he concedes to be due, the acceptance of the payment and giving of the receipt under those circumstances does not constitute an account stated, nor a payment of the whole claim.    [Wilson v. Palo Alto Co., 65 Iowa 18; Bridge

Co. v. Murphy, 13 Kas. 35; Railroad v. Clark, 92 Fed. Rep. 968.]

Among the exceptions filed by the plaintiff to the referee's report, were the following:

"2.   That the referee erred in holding that the estimates and decisions of the water commissioner of defendant were final and binding and conclusive as to the work and material embraced in this action.

"4.   That the referee erred in holding that as to the causes of action set forth in this case, there were accounts stated between plaintiff and defendant that were settled and paid and constituted a bar to this action."

Those exceptions were well taken, and the court erred in overruling them.   For this error the judgment of the circuit court should be reversed and the cause remanded to that court for a new trial.   *Brace, J.,* concurs in the views here expressed.