## BECK & CORBITT IRON COMPANY, Appellant, v. WM. B. HOLBECK, Respondent.

### Kansas City Court of Appeals, November 7, 1904.

1. **SALES: Warranty: Skill of Vendor.** Where the vendor knows the particular use for which the goods are bought and the buyer trusts to his judgment and skill, there is an implied warranty that the goods will be reasonably fit for the purpose intended.

2. ———: ———: **Size and Quality.** Where goods are sold by size or on exact description, there is an implied warranty that they are of the kind or description contracted for.

3. ———: ———: **Contract: Inspection.** Where there is an exact contract of sale, nothing is implied and the terms must govern; and where the vendor stipulates that his inspection shall be final and conclusive, then such inspection could be set aside only by showing corruption or gross partiality, misapprehension or ignorance of the facts.

Appeal from the Macon Circuit Court.—*Hon. Nat M. Shelton,* Judge.

AFFIRMED.

*White & Lacy, Finkelnburg, Nagel & Kirby* and *Truman P. Young,* for appellant.

(1)    Where personal property is purchased to be used for a particular purpose, known to the vendor, and the buyer does not inspect the goods, but trusts to the judgment or skill of the seller, there is an implied warranty that the goods will be reasonably fit for that purpose.    4 Benj. Sales (Bennet's 7 Am. Ed.), part 2, section 661; also section 657, under "fourthly;" also p. 686, Bennett's note, section 16, also section 656; Lee v. Saddlery Co., 38 Mo. App. 201; Armstrong, Gilbert & Co. v. Tobacco Co., 41 Mo. App. 258; Brewing Ass'n v. McEnroe, 80 Mo. App. 249; Aultmann, Miller & Co. v. Hunter, 82 Mo. App. 632; Creasy v. Gray, 88 Mo. App. 454; Bridge Co. v. Hamilton, 110 U. S. 108; Dawes & Co. v. Peebles, 6 Fed. 856; Skinner v. Glass Co., 77 S. W. 1011.    (2)    Where goods are sold by sizes, or other terms of exact description, there is always an implied warranty that the goods delivered are of the kind or description contracted for.    Benj. Sales (Bennet's 7 Ed.), p. 677; Bennet's Amer. notes, section 12; also p. 589, section 600, et seq.; Whittaker v. McCormick, 6 Mo. App. 114; Catchings v. Hacke, 15 Mo. App. 51; Voss v. Maguire, 18 Mo. App. 481; Long Bros. v. Armsby, 43 Mo. App. 253; English v. Spokane, 57 Fed. 451; Morse v. Moore, 13 L. R. A. 224; Grain Co. v. Brubaker & Co., 89 Mo. App. 1; Norrington v. Wright, 115 U. S. 203; Filley v. Pope, 115 U. S. 219; Pope v. Allis, 115 U. S. 371.    (3)    It necessarily follows from the nature of this warranty as a condition precedent to the due performance of the contract and the buyer's ability thereunder, that no express warranty as to quality, and no agreement by which the seller should act as inspector to determine whether the goods delivered were up to the contract quality, could exclude the effect of this warranty to deliver the kind of thing contracted for.    (4)    Even if the

seller were made the inspector to pass on the quality
of the axles, he could not, by approving sizes materi-
ally different from the contract size, avoid the abso-
lute duty imposed by law upon him to perform his con-
tract and deliver the kind of goods contracted for.
Mechem, Sales, sections 731, 1376 and 1208-9.    (5) In
the case at bar the correspondence shows that the
seller (respondent), who claims to be the inspector for
both parties to the contract, guaranteed to the buyer
that as the result of his inspection, "every stick would
make an axle."

Robert W. Barrow, Dysart & Mitchell and Joseph
Park & Son, for respondent.

(1)    There can be no implied warranty in this
case because the letters in evidence show the express
terms of the contract made, and these written condi-
tions exclude all implications.    Gratiot v. Wilkerson,
94 Mo. App. 528; Mockler v. Institution, 87 Mo. App.
483; Kinnerk v. Ball Club, 92 Mo. App. 669.    (2)
The correspondence shows that respondent refused to
sell these wagon axles except on the condition, express,
that the appellant would "stand his inspection."    This
was a part of the consideration for the sale.    Holbeck
had a right to so protect himself against the chances
of varying inspections on the market.    This contract
is legal, and ought to be upheld.    Courts can not make
contracts for parties, they can only construe them.
A contract making the decision of one party conclu-
sive is valid and binding.    Williams v. Railroad, 112
Mo. 463; Williams v. Railroad, 153 Mo. 487; Del Bon-
dio v. Packing Co., 70 Mo. App. 465; Nofsinger v.
Ring, 71 Mo. 549; Chapman v. Railroad, 114 Mo. 542;
McCormick v. St. Louis, 166 Mo. 315.

BROADDUS, J.—This suit is to recover part
payment made by plaintiff on the purchase price of
wagon axles sold and delivered by defendant to plain-

tiff, and also for damages alleged to have been sustained by plaintiff for breach of contract. The contract was made by telegrams and letters that passed between the parties.

On February 16, 1903, plaintiff wrote to defendant as follows:

"We have just wired you as follows: 'Will take two thousand axles. Have written in full. Answer.' In explanation, Mr. Green wrote us a few days ago, Feb. 11th, that you would let us have 2,000 4x5 axles one year old, at 50c. each, and all guaranteed first-class, above price, f. o. b. Atlanta. We would ask that you ship one large carload of these axles, say 1,000 pieces, to Fish Bros. Mfg. Co., Clinton, Iowa, at lowest obtainable freight rates sending us B-L and invoice. We will give shipping instructions for the balance of the lot at an early date."

To this defendant made the following answer:

"Sis: Your lette regarding wagon axels would sate, I told Mr. Green I could spare about 2,000 wagon axels 4x5 and would take 50 cents a piece F. O. B. Atlanta hoever Bought them stand my inspection and I would garrantee not to put in a stick that would not make a wagon axel but as far as garrenteed them first-class that was not named and I would not think of such a thing as that would give all kinds of room for troble I think they are good axels and in fact I know it I sold Joel Youny ' ? ' Wagon Co. 3 car loads and Biggs & G. 1 car load and they called them good what they got now if you want to stand my inspection I will load out a car. Reptfloy, W. B. Holbeck."

To this, plaintiff replied by telegram February 16, 1903, as follows:

"Will take two thousand axles. Have written in full. Answer."

The letter is as follows:

"Feb. 17, 1903.

"Replying to the latter part of your letter 16th inst. We request that you go ahead and ship the carload to Clinton, Iowa, as requested in our letter of yesterday. Our understanding of the offer made to Mr. Green is the same as stated in your letter, that is, that every axle was to be first class—that is, merchantable goods and suitable in every way for making axles. Would like very much to have you load a full half of the quantity if possible, as we want to make two cars of the entire lot of axles, so if you fall short of the 1,000 axles in the first car the balance would have to be put into two cars, and there would hardly be sufficient for that purpose."

Defendant answered on February 20th, which answer, after stating it would take several days to get a car for the shipment, is as follows:

". . . Now once more I want to say I shall inspect the car of axels my self and shall handle every one myself before they are loaded in car I shall not aim to a stick in car that wont make a axel in the first place I received nearly all the axels I have bought and have been very Particular to get what I called good ones and of corse after axels have been Housed a good while as these axels are and pretty well seasoned than will be some to throw ought I shall try to please you folks but I want this understood now that there will be no kicking and throwing out axels at other end of road and I am to have to have 50 cnt. pr. axel f. o. b. Atlanta for all I put in car and no kicking from what the agent said would bee some 3 or 4 days before he could get mee a car and this woll give you planty of time to answer if not satisfacty."

However, two days prior to this last letter, plaintiff wrote defendant the following letter:

"Feb. 18, 1903.

"Referring again to the carload order we sent you a day or two ago we are taking some chances in mak-

ing the shipment. It is very possible our customer will object to some of the axles, and, of course, that would make a loss for us. We request, therefore, that you be as particular as possible in inspecting the axles and do not ship any that you are not sure of. With this suggestion, we will leave the matter in your hands.''

And again, on February 21, plaintiff wrote defendant as follows:

''Answering yours of the twentieth inst. go ahead and ship these axles as quickly as you can get the cars. Make shipment in our name, using the inclosed tickets. We will do what we can for you in getting the car.''

The axles were shipped as directed and plaintiff paid defendant for them. The residue were not received. Other correspondence passed between the parties both before and after the shipment of the axles, but enough has been given to show the contract relied on for recovery.

The plaintiff offered to further prove in addition to the payment made to the defendant, that a great proportion of the axles shipped to Fish Bros. differed materially in size from 4x5 but were only from 3 and 1-2x4 inches; that they were shaky and worm eaten; and that they were made of the hearts of the timber, were crooked and not fit for the purpose intended. This evidence was excluded on objection made by defendant. Other evidence offered in support of plaintiff's case was also excluded. Whereupon, plaintiff took a nonsuit, which the court, on motion, refused to set aside. From all of which plaintiff appealed.

It is contended by plaintiff that where personal property is purchased for a particular purpose known to the vendor, and the buyer does not inspect the goods but trusts to the judgment and skill of the seller, there is an implied warranty that the goods will be reasonably fit for that purpose. And such is the law. Ault-

mann & Co. v. Hunter, 82 Mo. App. 632; St. Louis Brewing Ass'n v. McEnroe, 80 Mo. App. 429; Lee v. Sickles Co., 38 Mo. App. 201. And it is also the law that where goods are sold by sizes or other exact description, there is always an implied warranty that the goods are of the kind or description contracted for. Long Bros. v. Armsby, 43 Mo. App. 253; Voss v. Maguire, 18 Mo. App. 477; Benjamin on Sales (7 Ed.), p. 677.

But it must be conceded that where there is an express contract of sale, nothing is implied—it is the terms of the contract itself that govern. In the letters which constitute the contract here, the defendant expressly provided against any warranty of size or quality of the axles sold. He stipulated that he was to be the inspector, to which plaintiff agreed—and that such inspection should be final and conclusive. As the contract was conclusive and binding upon both parties alike, the inspection made by defendant could be set aside only upon a showing, "that he acted corruptly or in a grossly partial way or in misapprehension or ignorance of the facts." McCormick v. St. Louis, 166 Mo. 315; Williams v. Railway, 153 Mo. 487. There was no such evidence in the case and none such tendered. The effect of the contract under consideration was that defendant's inspection was not to be challenged for any cause, except for fraud, which the law would not permit. That defendant might have contracted against every lawful contingency affecting the size and quality of the axles sold, we do not think controvertible. That he did reserve to himself the right to determine those matters, and that his decision should not be questioned by plaintiff is unquestionable. The plaintiff, therefore, in proving the contract, proved himself out of court.

We find no error in the trial. Cause affirmed. All concur.