**GRANT RENNE & SONS, INC.,**
**Plaintiff-Appellant,**

**v.**

**J. E. DUNN CONSTRUCTION COMPA-**
**NY, Defendant-Respondent.**

**No. WD 31856.**

Missouri Court of Appeals,
Western District.

March 23, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

Application to Transfer Denied June 14, 1982.

Bart L. Strother, Morris & Faust, Kansas City, for plaintiff-appellant.

Duane J. Fox, William J. Burrell, Burrell, Seigfreid & Bingham, Kansas City, for defendant-respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Grant Renne & Sons, Inc. filed suit against J. E. Dunn Construction Company to recover $29,745 as the amount claimed to be due on a construction contract. Dunn asserted as a defense a release given by Renne. The jury found in favor of Renne for the amount claimed, but the court sustained Dunn's motion for judgment notwithstanding the verdict and entered judgment in favor of Dunn.[1] On this appeal Renne contends the court erred in entering judgment notwithstanding the verdict because it had shown facts which proved the release was given under duress. Affirmed.

Dunn had a contract with Providence St. Margaret's Health Center in Kansas City,

---

1. The court in the alternative sustained Dunn's motion for a new trial. Because of the disposition of this appeal, it is not necessary to consider the propriety of the ruling on the motion for new trial.

Kansas, for the construction of a new hospital building. Dunn's contract called for the hospital to pay Dunn the cost of construction, as set out in the contract, plus 4½% to cover Dunn's overhead costs. Dunn, in turn, entered into a subcontract with Renne by which Renne agreed to drill holes for the pouring of piers which would support the building. The plans called for the piers to go to specified depths. The holes to the depth specified in the plans were referred to as holes drilled "in plan." Holes which were drilled deeper than the plans called for were called holes "below plan."

The amount of the Renne contract was $30,865. Rock was encountered when the holes were drilled, both "in plan" and "below plan." Renne made a claim for extra compensation for removing rock both "below" and "in plan." The amount claimed for rock "below plan" was paid and no controversy surrounding that work is involved in this case. The claim made by Renne for the extra costs of removing rock "in plan" was referred to the architect, because the construction contract called for the architect to be the final arbitrator of any dispute concerning the interpretation of the contract. The architect decided that Renne's contract called for him to remove any material "in plan" of whatever nature and, therefore, Renne was not entitled to any extra compensation for the removal of rock. The question was also referred to Bevan McAnany, the attorney for the hospital, who gave the hospital a written opinion in which he concluded that the Renne claim for extra compensation for removing rock "in plan" should be denied.

In July, 1975, Renne retained Clem Fairchild as his attorney concerning his claim for extra compensation for rock. Portions of the deposition of Fairchild were read in evidence. He stated that he had represented a number of architects and contractors and knew that in this situation that Dunn would have to submit the question of Renne's claim to the hospital board of directors and that body would have to make the final decision. That was true, because under Dunn's contract, if the hospital did not agree to pay, then the only way Renne

could be paid would be for Dunn to pay out of his own pocket.

The evidence revealed that Renne encountered serious financial difficulties in December, 1975, when the IRS made a demand for unpaid withholding taxes. Fairchild stated that when Renne encountered financial difficulties Dunn began advancing money to Renne to pay his payroll before the monthly progress reports were received by Dunn. After the demand from IRS, Renne's financial condition continued to worsen. Renne told the IRS of its claim against Dunn, which amounted to $72,244, and the IRS served a levy on Dunn for $41,589.52 as the amount due it.

In February, 1976, the IRS seized Renne's bank account which caused checks for payroll and materials to be returned. At that time Renne had no assets, very little in accounts due and its real estate loans were overdue. Renne had mortgaged his own home and put that money in the business, and all the business equipment was mortgaged so that Renne had no other source of funds to put into the business. The corporation was solely owned by Grant Renne. Renne testified that about this time the IRS· threatened to padlock his business and liquidate all of his assets.

While Renne's financial conditions deteriorated, Dunn was trying to get the hospital to make some settlement of the Renne claim for rock. Mr. Dunn appeared at a hospital board of directors meeting in January, 1976, along with McAnany, and presented the matter to the board. The board requested McAnany to look into the matter and determine if the claim could be settled.

After that meeting, McAnany and Fairchild negotiated, with Fairchild reducing his demand from the $72,244 and McAnany making some offer in the $30,000 range.

In early March, 1976, Fairchild agreed to settle the claim for the amount of the IRS claim, plus Fairchild's attorney fee. As a result of this settlement, Renne executed a full release and settlement agreement by which he agreed to settle his claim for extra compensation for $42,500.

While the memories of McAnany, Dunn and Fairchild were somewhat dim as to exactly who negotiated the final settlement, a fair inference from the evidence would be that Fairchild had talked with both Dunn and McAnany and agreed to accept the $42,500. At the time the $42,500 was agreed upon, Dunn had not actually received approval from the hospital board of directors but he was assured that the president of the board, the chairman of the board's building committee and McAnany would all recommend that the settlement be approved. Dunn was also aware that the board, in discussing the claim, wanted to arrive at some settlement. Based on the knowledge that the settlement would be recommended to the board, Dunn actually paid Renne the $42,500 before the board formally approved the settlement.

Fairchild stated in his deposition that Dunn had not put any pressure on Renne to settle for $42,500. As to the settlement agreement, Fairchild stated that he told Renne exactly what he was doing and it was purely a decision that Renne had to make of whether or not to accept the settlement. Fairchild stated that under all the circumstances "I wasn't ashamed of the settlement."

■ In reviewing the action of the court in granting a judgment notwithstanding the verdict, this court considers the evidence and reasonable inferences favorable to the jury's verdict and disregards the contrary evidence except so far as it supports the verdict. *Bayne v. Jenkins,* 593 S.W.2d 519, 521[1, 2] (Mo. banc 1980).

Renne contends the judgment notwithstanding the verdict should be set aside because the evidence showed that Renne executed the settlement agreement and release under duress because Dunn took advantage of Renne's known financial distress.

Renne states a recognized principle of law but the facts in this case do not call for the application of that principle. A remarkably similar case is *McCormick v. City of St. Louis,* 166 Mo. 315, 65 S.W. 1038 (1901). There, McCormick had a contract with the City for certain construction work. A disagreement arose as to whether or not McCormick was entitled to extra compensation and finally a settlement was worked out between the parties by which McCormick agreed to take less than he originally demanded. McCormick later brought suit against the City for the balance he claimed was still due. In discussing the rule of duress as it affects the validity of a release, the court stated:

"That force or duress may be pleaded or shown to avoid the effect of or to have annulled a receipt given under its influence, is unquestionably true, but, to make the force or constraint upon a party causing his action availing to him as a defense against the consequences thereof, it should be shown that the party benefited thereby, or someone with his or its knowledge and approval, in some manner or by some means constrained or forced the action of the injured party. The thing that forced plaintiff to accept the terms of settlement offered by the defendant in this case was not in any wise the result of the action or conduct of defendant or any of its agents, but, as shown by plaintiff himself, was the result of circumstances and conditions over which the defendant city had no control, and with which it had no concern or connection,—'his financial necessities.' There is nothing in the claim, from a legal point of view, that plaintiff was forced to accept the terms of defendant's offer, and to receipt in full against all claims for work and labor done and performed under the terms of their several contracts. It was his free act, done in the full light of all the facts in the premises, and in the knowledge of the effect of his act, . . . ." 65 S.W. 1043–1044.

The same rule was stated in *State ex rel. Order of United Commercial Travelers of America v. Shain,* 339 Mo. 903, 98 S.W.2d 597, 601 (1936). There the court quoted from *Wood v. Telephone Co.,* 223 Mo. 537, 123 S.W. 6, 12 (1909) in which the court had quoted from 9 Cyc., p. 450, as follows:

" 'Duress then, according to this class of cases, includes that condition of mind produced by the wrongful conduct of another, rendering a person incompetent to contract with the exercise of his free will power, whether formerly relievable at law on the ground of duress or in equity on the ground of wrongful compulsion.'

"Note that it says 'produced by the wrongful conduct of another.' " 98 S.W.2d 601.

From the above it is clear that Renne, to recover in this case, was required to show that Dunn had engaged in some wrongful conduct to the extent that Renne was unable to exercise his free will in executing the settlement and release. All of the evidence is clear that Dunn never, at any time, engaged in any wrongful conduct. In fact, the evidence is clear that Dunn made every effort to try to assist Renne as shown by his payment of payroll amounts to Renne even before the monthly statements were received, as well as by Dunn paying the Renne claim for rock excavated "below plan" before Dunn had been reimbursed by the hospital. In addition, Dunn actually paid Renne the $42,500 in settlement before he was paid by the hospital and before formal approval had been given by the hospital board, although such approval was anticipated by Dunn. The evidence suggests that Dunn was instrumental in getting the hospital to agree to settle the Renne claim, and, indeed, from the evidence, it is at least doubtful as to whether or not the hospital would have agreed to voluntarily pay Renne any amount on his claim without the insistence of Dunn that Renne's claim be settled.

The evidence shows that Renne executed the settlement and release solely because of his financial necessity, but, as stated in *McCormick*, Dunn had nothing to do with Renne's financial difficulties. Renne attempts to lay his financial difficulties at Dunn's door because of the failure to pay his claim prior to the virtual death threat from the IRS. However, Renne's argument fails because the final decision of whether or not to pay Renne's claim lay with the hospital and not with Dunn. Renne's attorney acknowledged this, and, for that reason, negotiated directly with the hospital's attorney in an effort to settle the claim. Further, there is no doubt there was a serious question as to the validity of the claim so that the refusal to pay was not shown to be wrongful. Because the evidence failed to demonstrate any wrongful conduct on the part of Dunn which deprived Renne of his free will in executing the release, the court correctly entered judgment notwithstanding the verdict.

The judgment is affirmed.

All concur.