Christopher Shawn HILL,
Plaintiff-Appellant,

v.

AIR SHIELDS, INC.,
Defendant-Respondent.

No. 51105.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 28, 1986.

Motion for Rehearing and/or Transfer
Denied Dec. 3, 1986.

Application to Transfer Denied
Jan. 13, 1987.

Thurman, Smith, Howald, Weber & Bowles, Hillsboro, for plaintiff-appellant.

Williams & Montgomery, Ltd., Chicago, Ill., Anderson, Gilber, Wolfort, Allen & Bierman, St. Louis, for defendant-respondent.

CRANDALL, Judge.

Plaintiff, Christopher Shawn Hill, a minor, by and through Ronald D. Hill, his father and next friend, appeals from a grant of summary judgment in favor of defendant, Air Shields, Inc. We reverse and remand.

Plaintiff was born prematurely on May 19, 1969. At birth he weighed 3 pounds 5 ounces. He was transported almost immediately to St. Louis Children's Hospital for treatment for respiratory distress. There, he was placed in an incubator known as the Model C86 Isolette, which was designed, manufactured and sold by defendant.

While in the incubator, plaintiff was administered oxygen on a continuous basis until May 24. The levels of oxygen concentration initially started at 50 percent and were gradually decreased to between 30 percent to 40 percent. It was formerly believed that oxygen was safe if kept below levels of 40 percent. Later research determined, however, that there was no safe percentage for every premature infant. Defendant had manufactured and designed its Isolette to be equipped with a red warning flag. To administer oxygen in concentrations of greater than 40 percent, it was necessary to manually adjust this red flag.

Several months after his release from the hospital on June 26, 1969, plaintiff was diagnosed as suffering from Retrolental Fibroplasis (hereinafter referred to as RLF), an eye disease which resulted in total blindness in his right eye and loss of sight in his left eye so that his vision in that eye was limited to simple light perception. He brought a malpractice action against the doctor who delivered him, the pediatrician who treated him, and the hospital in which he received treatment. *See Hill v. Boles*, 583 S.W.2d 141 (Mo. banc 1979) (a prior appellate opinion on that litigation). He alleged, *inter alia*, that his condition of RLF was caused by excessive exposure to oxygen during his postnatal treatment at the hospital for respiratory distress.

Plaintiff later joined Air Shields, Inc. as a party-defendant. Plaintiff's theories of recovery in his petition against defendant sounded in strict liability and in negligence. He alleged that defendant had misled and had failed to warn the medical profession of the dangers of exposing premature infants to excessive oxygen. Defendant filed a motion to dismiss and for summary judgment. Plaintiff's counsel responded with his own sworn affidavit alleging that defendant knew that oxygen concentrations of 40 percent or less were dangerous to infants but did not so warn physicians and hospitals. Plaintiff alleged that defendant had fostered the belief that low levels of oxygen concentration were safe for all pre-

mature infants both in its literature about its product and by installing the red warning flag for oxygen levels of greater than 40 percent. The trial court granted summary judgment in favor of defendant. That judgment became final when plaintiff subsequently settled and dismissed his claims against all the other parties to the action.

Before turning to the substantive issues raised in this appeal, we consider the procedural aspects of a motion for summary judgment in general and the specific application of Rule 74.04 to this case. In ruling on a motion for summary judgment, the trial court and the appellate court must scrutinize the record in the light most favorable to the party against whom the motion for summary judgment was filed and against whom judgment was rendered, and must accord to that party the benefit of every doubt. *First National Bank of St. Charles v. Chemical Products, Inc.*, 637 S.W.2d 373, 375 (Mo.App.1982). Summary judgment is a drastic remedy and is therefore inappropriate unless the prevailing party has shown by unassailable proof to be entitled thereto as a matter of law. If a genuine issue of fact exists, summary judgment cannot be granted. A genuine issue of fact exists when there is the slightest doubt about the facts. The fact in doubt, however, must be a material one which has legal probative force as to a controlling issue. *Union Electric Co. v. Clayton Center Ltd.*, 634 S.W.2d 261, 263 (Mo.App. 1982) (citations omitted). "In negligence cases, summary judgment is generally not as feasible as in other kinds of cases." *Brown v. Upjohn Co.*, 655 S.W.2d 758, 760 (Mo.App.1983) (citations omitted).

Defendants argue at length not only of the improbability of plaintiff's position but also of the deficiency of plaintiff's affidavit filed in response to defendant's motion for summary judgment. However persuasive defendant's arguments may be, they are irrelevant to the preliminary determination of whether summary judgment will lie.

█ Summary judgment cannot be sustained upon the basis of the most proba-

ble of conflicting evidence. *Clary v. United Telephone Co.*, 670 S.W.2d 936, 939 (Mo.App.1984). The question is whether defendant has shown by unassailable proof that only one conclusion is possible and that it is, therefore, entitled to summary judgment as a matter of law. *See* Rule 74.04(h). Only when the moving party makes a *prima facie* showing that he has met this highest civil burden of proof does consideration of the other party's response become germane. In determining the issue of unassailable proof, the inquiry focuses not on what plaintiff failed to do in response to defendant's motion, but rather on whether defendant fulfilled his initial responsibility and burden as the moving party to show or to resolve by unassailable proof all genuine issues of material fact. *Fisher v. Scott & Fetzer Co.*, 664 S.W.2d 662, 664 (Mo.App.1984). Unassailable proof is that which leaves no room for controversy. *Porter v. Georgia Casualty & Surety*, 508 S.W.2d 27, 31 (Mo.App.1974).

In the present case, defendant filed an unverified motion unsupported by affidavits. In the motion, defendant made reference to particular parts of depositions taken during discovery in the present action and of testimony at the trial in the prior action, *Hill v. Boles*. Plaintiff opposed the motion for summary judgment by means of the sworn affidavit of his attorney in which he, in essence, repeated the allegations of fact contained in his Third Amended Petition; namely, that defendant had misled and had failed to warn the medical profession of the danger of administering oxygen in concentrations of 40 percent or less to all premature infants. Plaintiff filed no other counter-affidavits.

Defendant asserts that plaintiff's affidavit was insufficient and that plaintiff's failure to file the appropriate affidavits was tantamount to admitting the facts within defendant's motion for summary judgment. Defendant reasons that, as a result, it was entitled to have summary judgment granted. *See* Rule 74.04(e).

█ Rule 74.04(b) permits a motion to be made "with or without supporting affida-

vits." An unverified motion, however, may not substitute for one of the functions an affidavit performs in a summary judgment proceeding. *Upjohn*, 655 S.W.2d at 759. "The affidavit constitutes evidentiary material by which the moving party demonstrates entitlement to the drastic relief afforded by a summary judgment." *Id.; see also* Rule 74.04(h).

■ The purpose of the trial court's examination of proffered material extraneous to the petition is not to try an issue but to determine whether there is a genuine issue of material fact for trial. Here, it is unclear from the record before us what precisely was before the court. Defendant refers to depositions and to previous trial testimony, but whether these transcripts were actually before the court is not evident. It is not the function of the appellate court to sift through material furnished by the parties on appeal to determine the exact nature of the evidentiary material submitted to the trial court in a summary judgment proceeding. The preferable course for both the moving and opposing parties to follow in a motion for summary judgment would be to enumerate all portions of the transcripts and depositions referred to in the motion and to properly authenticate or certify the documents which they wish the trial court to consider in ruling on the motion. Unless the record reveals that the documents which the parties purportedly relied upon in the trial court were properly made part of the record, we cannot say that they were before the trial court and they are not now before us. *See, e.g., Stix & Co., Inc. v. First Missouri Bank and Trust Co. of Creve Coeur*, 564 S.W.2d 67, 69 (Mo.App. 1978).

■ In response to defendant's charge that plaintiff's affidavit was inadequate to oppose his motion for summary judgment, we note that the affidavit was not challenged in the trial court. The affidavit of plaintiff's counsel submitted on behalf of his client may have failed to satisfy the strict requirements of Rule 74.04(e), in that plaintiff's counsel was not competent to testify and did not have personal knowledge of any of the alleged facts. The affidavit, however, sufficiently brought the facts before the court and was within the spirit of Rule 74.04. Also, had defendant met its initial burden by submitting affidavits in support of his motion, Rule 74.04 may have required plaintiff to have done more than to simply rely on contrary allegations in his counsel's affidavit.

We now turn to the substantive issues raised in plaintiff's appeal. Defendant's motion for summary judgment posited two grounds for relief: (1) no duty either under a strict liability theory or under a negligence theory; and (2) no proximate cause as a matter of fact.

We first consider the question of duty under a strict liability theory. The concept of strict liability in tort was first adopted in Missouri for the defective manufacture of products in *Keener v. Dayton Electric Mfg. Co.*, 445 S.W.2d 362, 364 (Mo.1969). Recognizing the definition of the cause of action in Restatement (Second) of Torts § 402A (1965),[1] the Missouri Supreme Court held that the manufacturers and sellers of defective products, rather than the consumer, must bear the cost of the injury.

In *Blevins v. Cushman Motors*, 551 S.W.2d 602 (Mo. banc 1977), the court extended the cause of action acknowledged in

---

1. Section 402A provides:

(1) One who sells any product in a defective condition reasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Keener* for defectively manufactured products to products defectively designed. The court reaffirmed that a product may be found to be "unreasonably dangerous" and actionable under § 402A when it is "defective and dangerous when put to a use reasonably anticipated." *Id.* at 607 (citing *Keener*, 445 S.W.2d at 366).

■ Defendant's theory of liability in the present action is premised on a failure to warn under strict tort liability and under negligence. This comports with current Missouri law which grants to a plaintiff two options in a failure to warn case. He can bring his action either under a theory of negligence or under § 402A, a strict liability theory. *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 383 (Mo. banc 1986). Under a negligence theory, the presence of fault or the existence of knowledge are relevant considerations. *Id.* Strict liability, however, is not predicated upon the existence of knowledge or fault. *Id.* In strict liability we are talking about the condition (dangerousness) of an article which is designed in a particular way, while in negligence we are talking about the reasonableness of the manufacturer's action in designing and selling the article as he did. *Duke v. Gulf & Western Mfg. Co.*, 660 S.W.2d 404, 411 (Mo.App.1983). Strict liability focuses on the product, not on the conduct of the manufacturer or seller. *Racer v. Utterman*, 629 S.W.2d 387, 395 (Mo.App.1981).

■ Defendant posits that it cannot be held liable under strict products liability because, as the manufacturer of an incubator, it had no duty to warn the medical profession about the potential dangers inherent in the therapeutic administration of oxygen. The crux of defendant's argument denying responsibility for plaintiff's condition is that it did not manufacture the oxygen, the product which in fact injured plaintiff.

Assuming, *arguendo*, that defendant's argument is generally correct, such an assumption does not resolve the issue of strict liability as presented in this case. Plaintiff alleged in his petition that defend-

ant actively promoted the "40 percent rule" by use of literature associated with the incubator and by installing the red warning flag as a safety device on its Isolette incubator. Defendant counters that a manufacturer of mechanical hospital equipment has no duty to warn physicians about the state of current medical research. To support its position, defendant relies on *May v. Dafoe*, 25 Wash.App. 575, 611 P.2d 1275 (1980), a case in which the plaintiff, May, was also blinded by the use of oxygen in an Isolette incubator. The incubator was manufactured by the same defendant who is a party to the present action, but was a different model.

That court held that an equipment manufacturer's duty to warn related "only to design, engineering, and functional dangers." *Id.* 611 P.2d at 1277. The court further stated:

> May was injured because the user of the Isolette permitted his exposure to an excessive amount of oxygen. But the injury he received was not the result of any dangerous propensity of the incubator itself. It was solely a direct and proximate result of a medical decision to administer oxygen.

*Id.*

The *May* case is similar on its facts to the present one in that plaintiffs in both actions were premature infants who were treated in incubators manufactured by defendant. During treatment, they were exposed to excessive amounts of oxygen. Both plaintiffs suffered blindness as a result of their overexposure to oxygen.

*May*, however, is equally distinguishable on its facts from the case before us. May was born prematurely in 1955. Approximately one year prior to that date, preliminary results of a nationwide study of RLF causation were released. The duration of oxygen therapy and to an unknown extent the concentration of oxygen were linked to RLF. Based upon this information, defendant sent a letter to all hospitals using its Isolette incubators, advising them that it was of "paramount importance" that ox-

ygen concentrations be maintained "below 40 percent."

In contrast, plaintiff in the present action was born fourteen years later and was placed in a newer model of defendant's Isolette incubator. At that time, the incubator was equipped with a red warning flag which had to be raised in order to administer oxygen at levels over 40 percent. Plaintiff contends that, before defendant placed this model on the market, it knew that the 40 percent guideline was no longer valid and did nothing to disseminate this information to the medical community.

To grant summary judgment to defendant, the trial court had to determine that there was no genuine issue of material fact to be tried under plaintiff's strict liability theory of failure to warn. We believe, however, that there are issues as to material facts which should have been resolved at trial; namely, whether the machine as designed or the literature describing its use fostered a misuse of oxygen, with the result that the incubator was unnecessarily dangerous when it was sold without a warning.

We next consider whether there exists an issue of fact as to the existence of duty under a negligent failure to warn theory. Although negligence and strict liability theories are separate and distinct, the same operative facts may support recovery under either theory, particularly in a failure to warn case. Certainly, if defendant promoted a belief that oxygen concentrations of less than 40 percent were universally safe when it was aware of research results to the contrary, then it was negligent. "Every manufacturer has a duty to warn of dangers in the use of its product." *Air Shields, Inc. v. Spears*, 590 S.W.2d 574, 578 (Tex.Civ.App.1979).

██ Generally, a claimant in a negligence action must establish (1) a legal duty on the part of defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the claim-

ant's person or property. *Hoover's Dairy, Inc. v. Mid-American Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985). The duty does not extend to protect against every possible injury which might occur. *Id.* Rather, it is measured by whether or not a reasonably prudent person would have anticipated danger and provided against it. *Id.* Knowledge *per se*, however, is not an essential element of a negligence action. The pivotal issue is foreseeability; that is, whether the person knew or should have known that some injury might result from his act. *Id.*

██ Plaintiff raised factual issues sufficient to preclude summary judgment. The plaintiff should have been permitted to present evidence to determine if it was feasible and appropriate for defendant to provide medical facts and information relating to the proper use of its incubator, consistent with medical facts as they were known, to insure that the incubator would not be used in a manner to produce RLF. *See Spears*, 590 S.W.2d at 578. He should have been allowed to develop evidence that defendant, as the manufacturer, was uniquely situated to appreciate the medical risks inherent in the use of its incubator; that defendant had promulgated the "40 percent rule" which it knew to be unsound; and that warnings on medical appliances can act as a reminder to the doctor or hospital telling them something they don't know or causing further inquiry. *See Id.* We therefore hold that defendant failed to prove, as a matter of law, that it owed plaintiff no duty under plaintiff's negligence theory.

Lastly, we consider defendant's contention that plaintiff has failed to establish that his injury was proximately caused by defendant's failure to warn. Defendant relies on the depositions and trial testimony of two doctors in the prior action of *Hill v. Boles*. He argues that the treatment of plaintiff would have been the same even if there had been a warning about the safe levels of oxygen for premature infants. Proof of causation is an indispensable element of a plaintiff's case in products liabili-

ty cases just as it is in negligence cases. *Nesselrode*, 707 S.W.2d at 381; *Jackson v. Ray Kruse Construction Co., Inc.*, 708 S.W.2d 664, 669 (Mo. banc 1986).

We recognize that the burden to prove proximate cause is clearly plaintiff's burden. As indicated earlier, however, in a summary judgment proceeding, the burden shifts to defendant to show by unassailable proof that plaintiff cannot recover at trial. The Missouri Supreme Court recently addressed the issue of causation in a negligence action, *Jackson v. Ray Kruse Construction Co., Inc. Id.* The court stated that "the law deals in probabilities." The precipitating cause is a legally sufficient cause if it is demonstrated to be a "substantial factor" in bringing about the injury. *Id.* at 669 n. 6. "A cause which meets the substantial factor test is a cause in fact." *Id.*

In the present action, defendant argues that there is no proof that the doctors would have heeded its warnings, thereby preventing plaintiff's overexposure to oxygen and his resultant blindness. In a failure to warn case, "it is not necessary to show with certainty that the warning would have prevented the casualty." *Id.* at 668. It also is not necessary to demonstrate with certainty that warnings placed directly on the product would have been seen and heeded. *Id.* (citing *Nesselrode*, 707 S.W.2d at 381). A rebuttable presumption arises that a warning will be heeded. *Duke*, 660 S.W.2d at 419.

Admittedly, if there is no warning, the manufacturer may reasonably assume that the user will neither read nor heed it. *Racer*, 629 S.W.2d at 394. When no warning is given, the causation question becomes one for the jury to determine. *Id.* It was for the jury to decide if defendant's failure to warn of the dangers of excessive oxygen was the proximate cause of plaintiff's blindness.

Moreover, defendant's reliance on trial testimony from previous litigation would be appropriate only if collateral estoppel lies. Collateral estoppel, or issue preclusion, provides that a fact judicially determined in one action may not be litigated again in another action involving different issues. *Johnson v. Raban*, 702 S.W.2d 134, 136 (Mo.App.1985). The test for determining whether the application of collateral estoppel is appropriate is: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Id.*

The facts of this case, viewed against the backdrop of the four-part test for collateral estoppel, do not warrant the application of collateral estoppel. The issues in the present and prior actions are not identical, in that the issue is the prior litigation was the negligence of the treating physicians and of the hospital. Defendant's failure to warn was not litigated. The prior adjudication did not result in a judgment on the merits, but was reversed on appeal and was dismissed after settlement. Defendant was not a party or in privity with a party to the prior adjudication. Plaintiff did not have a full and fair opportunity to litigate the failure to warn issue in the prior suit against the doctors and hospital. It was improper for the trial court to grant summary judgment on the basis of evidence from a previous trial which has no collateral estoppel effect on the present action.

The summary judgment entered by the trial court is reversed and the cause is remanded for trial.

SNYDER, C.J., and PUDLOWSKI, P.J., concur.