LANDMARK NORTH COUNTY BANK
& TRUST CO., Plaintiff,

v.

NATIONAL CABLE TRAINING
CENTERS, INC., et al.,
Defendants.

Larry A. BROWN and Edna Brown,[1]
Defendants-Third-Party
Plaintiffs-Appellants,

v.

Robert O. SCOTT and Group W Cable,
Inc., Third-Party
Defendants-Respondents.

No. 51512.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 29, 1987.

Motion for Rehearing and/or Transfer
Denied Oct. 28, 1987.

1. Although referred to as an appellant through-

out the briefs, Edna Brown was not named as

an appellant in the Notice of Appeal nor is she an aggrieved party entitled to review of the judgment under § 512.020, RSMo. 1986. *Hicks v. Graves Trucking Lines, Inc.,* 707 S.W.2d 439, 441 (Mo.App.1986). She is not a proper party to this appeal.

Joseph A. Fenlon, Clayton, for National Cable Training Centers, Inc., et al.

Gale Anne Todd, St. Louis, for Robert Scott.

Gerard Timothy Carmody, David James Massa, Deborah Bell Yates, St. Louis, for Group W. Cable, et al.

CARL R. GAERTNER, Judge.

In response to the claims of third-party plaintiff, Larry Brown, for tortious interference with contracts and business expectancies, third-party defendants, Robert Scott and Group W Cable, Inc., each moved for summary judgment on the ground that Brown had executed a release relieving them of liability on the claims. The trial court sustained the motions. Brown appeals. He contends the trial court erred 1) in sustaining the motions where a substantial question of fact existed as to whether the release was induced by fraud and duress, 2) in finding consideration for the release, 3) in hearing the motions without requiring the ten day notice specified in Rule 74.04, 4) in abusing its discretion by failing to continue the hearing on the motions until further discovery could be conducted, and 5) in denying Brown his right to a jury trial by granting summary judg-

ment when a question of fraud was raised regarding the release. We affirm.

In February of 1984, Landmark North County Bank instituted a replevin action on a $25,000 note executed by National Cable Training Centers, Inc. ("National Cable") and guaranteed by Larry and Edna Brown. At the time the note was signed, Larry Brown was president of National Cable, a wholly owned subsidiary of Group W Cable, Inc. The Browns filed a three count, third-party petition against Robert Scott and Group W Cable. In Count I the Browns sought indemnification for any liability on the note. In Counts II and III, Larry Brown sought separate damages for tortious interference with contracts and business expectancies. Brown claimed that Scott and he entered into an oral agreement with Group W for the sale of National Cable. According to Brown, Scott and Group W then interfered with his contract rights by excluding him from the final sale of the business. He also alleged that Group W interfered with his employment contract rights as president of National Cable.

In February of 1986, Landmark Bank dismissed its replevin action without prejudice, and the Browns dismissed Count I of their third-party petition. Group W then moved for summary judgment arguing that Brown had executed a release relieving it of liability on the claims. In support of its motion, Group W attached a copy of the release and cited deposition testimony of Larry Brown in which he admitted executing the release.

Brown filed a reply to Group W's affirmative defense alleging that the release was void because "(a) [t]here was no consideration; (b) [t]he signature was obtained by fraud; and (c) [t]he signature was obtained under duress." Brown filed nothing else in opposition to the motion for summary judgment.

Scott adopted Group W's motion and memorandum in support of summary judgment. The motions were heard and sustained by the trial court on March 31, 1986. Before addressing the substantive issues asserted on this appeal, we deem it necessary to comment upon the procedural posture of the record presented to us in light of the requirements of Rule 74.04. A motion for summary judgment may be made with or without supporting affidavits. Rule 74.04(a), (b). The crux of summary judgment procedure is the determination of the existence or non-existence of a genuine issue of material fact as ascertained from "the pleadings, depositions and admissions on file, together with the affidavits, if any ..." Rule 74.04(c). The non-moving party "may not rest upon mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). Where reliance is placed upon deposition testimony or interrogatory answers or other documents, it is appropriate for both the moving and opposing parties to enumerate or specifically direct the court to particular parts of the deposition transcript, interrogatory answer, admission or exhibit upon which reliance is based. *Cooper v. Finke,* 376 S.W.2d 225, 229 (Mo.1964); *Hill v. Air Shields, Inc.,* 721 S.W.2d 112, 116 (Mo.App. 1986). It is necessary that this enumeration or direction be made a matter of record, because "[i]t is not the function of the appellate court to sift through material furnished by the parties on appeal to determine the exact nature of the evidentiary material submitted to the trial court in a summary judgment proceeding." *Hill* at 116. Unless the record demonstrates the documents purportedly relied upon were properly and timely made a part of the record, we cannot say they were considered by the trial court and they may not be considered on appeal. *Hill* at 116; *Stix & Co., Inc. v. First Missouri Bank & Trust Co. of Creve Coeur,* 564 S.W.2d 67, 69 (Mo.App.1978).

As part of the record on appeal, the parties filed with this court approximately 844 pages of deposition testimony. The record shows that Scott's deposition was not filed in the trial court until May 6, 1986, which was 37 days after the court ruled upon the motions. Nevertheless,

both parties cite excerpts from this deposition in their appellate briefs. Also filed here is a transcript of the deposition of one Marie Veal. Her deposition was not filed in the trial court until 30 days after the ruling on the motion. Reference to this testimony set forth in respondent's brief is disregarded. We are unable to determine the purpose for filing the deposition testimony of Edna Brown or the relevance of her testimony to the issues on appeal. The only evidence concerning material matters before the trial court was the deposition of Larry Brown, the interrogatory answers by Group W and the pleadings of the parties. We look to the pleadings not as evidence, but only for the purpose of framing the issues. *Sturgeon v. State Bank of Fisk*, 616 S.W.2d 578, 581 (Mo.App.1981).

■ Group W accompanied its motion for summary judgment with suggestions in which excerpts from Brown's deposition, relevant to the defense of release, were set forth verbatim. Scott's motion and suggestions were identical. Brown filed no affidavit in opposition nor did he direct the attention of the trial court to any other deposition testimony or other exhibit tending to show the existence of a genuine issue of material fact pertaining to the release. Rather, he filed an unverified reply alleging the release was void because "1) [t]here was no consideration; 2) [t]he signature was obtained by fraud; 3) [t]he signature was obtained under duress." These conclusionary allegations fall far short of constituting evidence of "specific facts showing there was genuine issue for trial." Rule 74.04(e).

■ Similarly, Brown's attempt to supplement the record by filing a Motion to Reconsider with an attached affidavit is of no avail.

Such a motion is not specifically authorized by statute or rule. It is not necessary to decide if it can be considered as a motion for new trial or a motion to amend the judgment as authorized by Rule 73.01 pertaining to cases tried without a jury. Unless the trial court does vacate the summary judgment, such a motion should not be used as a vehicle

for supplementing the controverting evidentiary material before the trial court at the time the summary judgment was entered. A contrary rule would in effect permit a losing party to introduce additional evidence after a judgment had been rendered.

*Sturgeon v. State Bank of Fisk*, 616 S.W.2d at 581. The filing of such post-submission affidavits clearly is not in compliance with the requirement of Rule 74.04(c) and has no effect upon the propriety of the trial court's grant of summary judgment. *Warner v. Berg*, 679 S.W.2d 913, 915 (Mo.App. 1984).

Since the evidence of record before the trial court at the time of submission of the motion consisted only of Larry Brown's deposition and Group W's interrogatory answers, we examine these documents in light of the issues framed by the pleadings to determine if they establish that the third party defendants are entitled to summary judgment by "unassailable proof." Rule 74.04(h). We first focus not upon what Brown failed to do in response to the motions, but rather upon the sufficiency of the supporting evidence filed by movants to sustain their burden of establishing the absence of any genuine issue of material fact. *Hill v. Air Shields, Inc.*, 721 S.W.2d at 115.

■ Release is an affirmative defense placing the burden of proof upon the party asserting the defense. Where the execution of a release purporting to rest upon a consideration is admitted, the burden of proving some invalidity in the release shifts to the party opposing the defense. *Jenkins v. Simmons*, 472 S.W.2d 417, 420 (Mo. 1971); *Foster v. Aetna Life Ins. Co.*, 352 Mo. 166, 176 S.W.2d 482, 485 (Mo.1943). This presumption of validity of an executed release is founded in the policy of law to encourage freedom of contract and the peaceful settlement of disputes. *Grand Motors, Inc. v. Ford Motor Co.*, 564 F.Supp. 34, 38 (W.D.Mo.1982); citing *Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 480 (Mo. banc 1972).

In the instant case by filing a copy of the release which on its face recites consideration and by directing the court to Brown's deposition testimony wherein he admitted signing the release, Group W and Scott fulfilled their burden. The burden shifted to Brown to produce evidence before the court to overcome the presumption of validity. Brown argues that the evidence shows the release is invalid due to a lack of consideration. He also contends that the evidence supports his claim that he was induced to sign the release by fraud and duress. If there is evidence tending to support any one of these contentions, a question of fact would be shown to exist requiring reversal of the summary judgment. Our review of the record reveals no such evidence.

Brown first argues the release is invalid because of lack of consideration. The burden of proving consideration is upon the party relying on the agreement. *Ennis v. McLaggan*, 608 S.W.2d 557, 561 (Mo.App.1980). That burden is met by the introduction in evidence of the written agreement which recites consideration. "The recitation of consideration in an agreement is prima facie evidence that consideration to support the agreement was present; it creates a presumption that the recitals are true, which presumption continues unless overcome by evidence to the contrary. (citations omitted)." *In Re Estate of Weinsaft*, 647 S.W.2d 179, 183 (Mo. App.1983). Here, rather than overcoming the presumption of consideration, Brown's testimony supports it. He testified he signed the release in order to keep Group W from closing National Cable. At the time, Brown was president of the corporation with an income of $60,000 per year. Brown testified that he also wanted to prevent the closing because of his concern for employees whom he had recruited and for the concept of minority job training. In addition, forbearance by Group W of its right to terminate a subsidiary corporation whose balance sheets showed a loss in excess of $250,000 in the preceding year demonstrates consideration. Brown's own testimony discloses a benefit to him and a detriment to Group W, either of which is a consideration sufficient to support the contract of release. *See Wells v. Hartford Accident & Indemnity Co.*, 459 S.W.2d 253, 260 (Mo. banc 1970).

The basis of Brown's argument appears to be that when he signed the release on March 25, 1983, Group W had already sold the corporation to Scott by agreement executed on March 22, 1983. This argument overlooks Brown's own testimony that he knew "they," would close the school if he didn't sign the release; by 'they' he was referring to either Group W or Scott or both of them. Moreover, the sale of National Cable to Scott was not consummated on March 22. The contract executed that date provided for the closing of the sale only after performance of certain conditions. The closing did not occur until March 29, after the execution of the release.

Brown also contends the release was obtained by fraudulent misrepresentation. The record reflects no representations made to him in connection with the execution of the release other than Scott's statement that if he refused to sign it the school would be closed. There is nothing to suggest that this statement was false. In his brief Brown merely refers to his contention that Group W had relinquished the ability to close the school. We have previously found this to be an unsupported contention. Furthermore, we find no evidence of any fraudulent misrepresentation which may have induced Brown to sign the release.

Brown next contends that the threat to close National Cable if he did not sign the release constituted duress thereby invalidating the release. To constitute duress, the victim must have been so acted upon by threats of the person claiming benefit of the release as to deprive the victim of the mental state essential to the making of a contract. *Wolf v. St. Louis Public Service Co.*, 357 S.W.2d 950, 954 (Mo.App.1962). Although Brown testified that he was under stress and had strong reservations about signing the release, he clearly chose to relinquish any claims he

had against Scott or Group W in order to allow the sale of National Cable to close and prevent the threatened closing of the business. Adverse business conditions do not constitute duress unless the party imposing these conditions is doing so wrongfully. *Grant Renne & Sons, Inc. v. J.E. Dunn Construction Co.,* 633 S.W.2d 166 (Mo.App.1982). The record shows no evidence to support the claim that Scott or Group W were by wrongful conduct rendering Brown incapable of exercising his free will in executing the release. *Id.* at 169.

Brown also asserts trial court error in failing to comply with the 10 day notice requirement of Rule 74.04. The record refutes his contention insofar as the motion of Group W is concerned. Its motion was served upon Brown's attorney 11 days before the trial court heard the motion. Scott's motion was not served prior to the 10 day period. However, Scott merely adopted the motion and suggestions of Group W. Brown does not suggest any prejudice suffered as a result of the simultaneous hearing of identical motions. Moreover, the record reflects no objection by Brown to the submission of both motions at the same time. Accordingly, he has waived any right to raise on appeal an objection not presented in the trial court.

Brown claims the trial court erred in considering the motions for summary judgment before discovery was completed. Under Rule 74.04(c) the trial court has discretion to continue the hearing on a motion for summary judgment until further discovery can be conducted. However, the record fails to show that Brown ever requested such a continuance. He *cannot now complain that the trial court* erred in failing to order a continuance which he did not request. Moreover, in the absence of any suggestion of the existence of facts which would alter the result, it does not suffice to defeat a movant's right to summary judgment for his adversary to "hope and trust" he might stumble upon a defense in the future. *Gal v. Bishop,* 674 S.W.2d 680, 683 (Mo.App.1984).

Finally, Brown argues that by sustaining the motions for summary judgment the trial court violated his right to a jury trial on the issue of whether the release was induced by fraud. In support of this point, Brown points to the language of Rule 69.01(a) which states: "any issue as to whether a release, composition or discharge of the plaintiff's original claim was fraudulently or otherwise wrongfully procured shall be tried by jury unless waived." A motion for summary judgment is like a directed verdict. Where all of the evidence leaves no issue of fact for determination there is nothing for the jury to decide. *United Farm Agency v. Howald,* 263 S.W. 2d 889, 892 (Mo.App.1984). Brown failed to produce evidence before the trial court on the motions for summary judgment which presented any question of fact for the jury on the issue of fraud. Brown, therefore, had no right to a jury trial on the issue.

The judgment is affirmed.

Senior Judges SNYDER and SIMEONE, concur.