In the ESTATE OF Elbert D. CASS, Deceased.

Majuana F. KIBBY, Personal Representative of the Estate of Elbert D. Cass, Respondent,

v.

Marguerite CASS, Appellant.

No. 15218.

Missouri Court of Appeals, Southern District, Division One.

June 30, 1988.

Motion for Rehearing or Transfer to Supreme Court Denied July 19, 1988.

John E. Price, W. Craig Hosmer, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for appellant.

Ellsworth Haymes, John W. Sims, Haymes, Sims & Thompson, Marshfield, for respondent.

HOLSTEIN, Judge.

The Probate Division of the Circuit Court of Webster County, Missouri, entered summary judgment against Marguerite Cass on her claim against the Estate of Elbert D. Cass. The claim sought compensation for services rendered to the decedent, Elbert Cass, by Marguerite. Pursuant to a motion for summary judgment filed by the estate, the trial court determined that the original claim filed by Marguerite was barred by the statute of limitations. The only question presented on appeal is whether there is a genuine issue of fact that the five year statute of limitation prescribed in § 516.120 [1] had run at the time Marguerite filed her original claim. We reverse.

Elbert Cass died testate March 12, 1986. Marguerite was not a beneficiary under the will. On September 3, 1986, less than six months after the first publication of notice of letters testamentary, Marguerite filed her claim. See § 473.360. The claim was for $24,900 and was based upon services she claimed to have rendered for Elbert during a three year and seven month period at the rate of $20 a day. Credit was given for $150 a month for the period beginning December 15, 1980, and ending on August 15, 1981. Attached to the claim was a typewritten statement that the claim was for "services rendered from February 3, 1977 through September 1978. Resuming in September 1979 through September 13, 1981." Attached pages further itemized various services rendered. The services are best summarized in four categories: (1) preparing and taking meals to Elbert twice daily, (2) administering Elbert's medication, (3) performing limited domestic duties in Elbert's home, and (4) transporting or running errands for Elbert. At the

---

1. Unless otherwise indicated, all references to statutes are to RSMo, 1986, and all references to rules are to Missouri Rules of Court, V.A.M.R.

conclusion of the second typewritten page, Marguerite stated, "I did feel he would pay me as he promised as he praised the care he was receiving. Uncle Elbert paid me $150. a month from 12/15/80–8/15/81. A small amount that did not pay for the food he ate daily but helped in the total cost."[2]

On March 30, 1987, a motion for summary judgment was filed by the attorney for the estate asserting that Marguerite's claim was barred by the statute of limitations. Attached to the motion was an affidavit of the attorney for the estate. Appended to his affidavit were a copy of the original claim against the estate and eight pages excerpted from the deposition of Marguerite. No response to the motion was filed by Marguerite. On March 31, 1987, the deposition of Marguerite Cass was filed with the trial court. On April 16, the motion for summary judgment was argued by counsel. On the same date, a summary judgment was entered for the estate. This appeal followed.

Rule 74.04(c) authorizes a summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In addition, no summary judgment shall be granted on any issue unless the prevailing party has shown by unassailable proof to be entitled thereto as a matter of law. Rule 74.04(h) (repealed).[3]

An order of summary judgment will not be set aside on review if supportable on any theory. Summary judgment is appropriate in the first instance only when no theory within the scope of the pleadings, depositions, admissions and affidavits filed would permit recovery and the moving party is entitled to judgment as a matter of law. This Court reviews the record on summary judgment in the light most favorable to appellants. (Citations omitted). *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 243–244 (Mo. banc 1984).

Marguerite argues that her claim shows there were genuine issues of fact as to whether the statute of limitations period had expired. She refers us not only to her claim, but to portions of her deposition which were apparently not included in the materials presented to the trial court when the motion for summary judgment was argued.

As a preliminary matter, we must determine what portions of Marguerite's deposition are before us for our consideration. Almost as an afterthought, the day after Marguerite filed her appellate brief, a document entitled "Supplemental Legal File" was presented to the clerk of this court. No leave was sought nor has this court granted leave to file that document as a "Supplemental Legal File," although we overruled a motion by the estate to strike it on unrelated grounds. The purported supplemental legal file is a copy of Marguerite's entire deposition.

There is nothing in the record to indicate that this deposition was ever presented to the trial judge. Certainly, Marguerite's attorney never bothered to respond to the motion for summary judgment by filing any affidavit or certified copies of parts of the deposition to which Marguerite refers our attention on appeal. A similar situation occurred in *Hill v. Air Shields, Inc.*, 721 S.W.2d 112 (Mo.App.1986), in which a summary judgment was entered. The appellate court there was uncertain as to exactly what evidentiary materials were be-

---

**2.** A purported "amended claim" of Marguerite appears in the legal file. The attachments to that document are not made part of the legal file here. We note that this document was filed without leave of court and no effort was made to serve a copy of it on the attorney for the estate until November 19, 1986. On the face of the document there is no file stamp similar to that found on other documents in the court file, but merely the handwritten notation, "Filed 10––86." This court was informed, by way of oral argument, that Marguerite is making no attempt to rely on any allegations of the purported "amended claim." We therefore make no further mention of this suspect document.

**3.** Because the "unassailable proof" standard has now been repealed, this opinion should not be considered as authority for the standard for courts to follow in summary judgment determinations entered after January 1, 1988.

fore the trial court. In the face of that situation, the court stated at 116:

It is not the function of the appellate court to sift through material furnished by the parties on appeal to determine the exact nature of the evidentiary material submitted to the trial court in a summary judgment proceeding. The preferable course for both the moving and opposing parties to follow in a motion for summary judgment would be to enumerate all portions of the transcripts and depositions referred to in the motion and to properly authenticate or certify the documents which they wish the trial court to consider in ruling on the motion. Unless the record reveals that the documents which the parties purportedly relied upon in the trial court were properly made part of the record, we cannot say that they were before the trial court and they are not now before us.

See also *Schelle v. Mercantile Bancorporation, Inc.,* 741 S.W.2d 720, 722 (Mo.App. 1987). The record does not reveal that the entire deposition was properly presented to the trial court, and appellant has failed to properly present it here. Except for those portions attached to the motion for summary judgment, we disregard the deposition in determining whether the trial court should have sustained the motion for summary judgment.

Returning to Marguerite's argument, she suggests that her claim, which was a part of the motion for summary judgment, was sufficient to show that the statute of limitations had not run. She argues that her claim was sufficient to place the estate on notice that the claim was made pursuant to an oral contract by the decedent for her services which were to be paid either when completed or by way of a bequest in decedent's will. In support of her position, she cites *Cole v. Estate of Armstrong,* 707 S.W.2d 459 (Mo.App.1986). *Cole* states that a claim is sufficient if it "gives reasonable notice to the legal representative of the estate of the nature and extent of the claim and is sufficiently specific so that a judgment thereon will be res judicata of the obligation on which it is based." *Cole, supra,* 461.

■ Unlike *Cole* and other cases cited by appellant, we are not dealing here with a motion to dismiss, but with a motion for summary judgment. When a motion for summary judgment is made and supported by affidavits or depositions, an adverse party may not rest upon mere allegations or denials in his pleadings but must, in order to overcome the motion, by affidavits or otherwise, set forth specific facts showing a genuine issue for trial. *American Bank of Princeton v. Stiles,* 731 S.W.2d 332, 338–339 (Mo.App.1987). Thus, the sufficiency of the claim to state a cause of action for breach of an agreement is not dispositive. The dispositive question is whether there is a genuine issue of fact as to expiration of the statute of limitations period applicable to the claim.

■ A civil action on an express or implied contract for personal services must be commenced within five years after the cause of action has accrued. §§ 516.100 and 516.120. A cause of action accrues when the damages are sustained and are capable of ascertainment. § 516.100. If the services contracted for are a single, entire, continuous employment, the cause of action accrues on the last date upon which services are performed. See *Minor v. Lillard,* 289 S.W.2d 1, 6 (Mo.1956). If the services contracted for are to be paid by a bequest in a decedent's will, the cause of action accrues when the decedent dies without making a bequest in his will to pay for services. See *Balsano v. Madden,* 138 S.W.2d 660, 663 (Mo.App.1940).

■ Marguerite's claim was presented as part of the motion for summary judgment. On the face of the claim, it asks for $20 a day for two periods of time. The former commences February 3, 1977, and ends in September, 1978, and the latter commences in September of 1979 and ends September 13, 1981. In the deposition pages attached to the motion for summary judgment, Marguerite admits she was paid $150 per month from December of 1980 until September 13, 1981. Viewing those facts in a light most favorable to appellant,

Marguerite has only received partial payment for the period covered by the claim.

A hiatus or intermission of services for a period of time does not establish that the agreement was divisible. *Minor v. Lillard, supra.* Evidence of the hiatus and that Marguerite received partial payment may give rise to an inference that the terms of employment had changed to such an extent that the continuity of employment was broken. However, such inference does not rise to the level of "unassailable proof." A trier of fact could reasonably conclude the employment was continuous, under one contract. There is a genuine issue of fact as to whether the contract was continuous or divisible. If continuous, the claim accrued no earlier than the last date services were rendered to decedent. That date was less than five years prior to the filing of the claim.

The estate argues that the deposition extract amounts to unassailable proof that Marguerite was paid "for all of her services which were rendered to the decedent ..." after December of 1980. The specific portions referred to read as follows:

Q: Okay, so that would be that payment for that period of time where it says feed—
A: Mm-hmm.
Q: That's payment for your services?
A: Yeah, everything I did for him I just put feed.

.    .    .    .    .

Q: All right, you filled out the check and Mr. Cass signed it—
A: Signed it.
Q: —for $150 and that is a copy of the endorsement on the back is by Raymond Cass, is that your writing or your husband's writing?
A: That's my writing.

.    .    .    .    .

Q: That would be a compensation to you however, correct?
A: It sure is, yes.

.    .    .    .    .

Q: And your endorsement on the back for that period of time. Show you a check marked Estate Exhibit 17, a check dated August 10th, 1981 in the amount of $150, again it says feed on that one.
A: Yeah, that included everything.
Q: All right, and that feed was in your handwriting?
A: Yeah.

These statements, viewed in a light favorable to Marguerite, indicate that her memo on the checks of "feed" described all duties she performed, including, but not limited to, feeding Elbert. However, these deposition statements are not unassailable proof that she was paid in full for her services or that the terms of her employment were so different during the period in question as to establish a separate contract of employment.

We need not specifically decide whether the claim is sufficient to put the estate on notice that the claim is based on an oral contract to make a will, which in turn would result in the claim accruing at Elbert's death. It is sufficient to note that oral contracts to devise are unenforceable at law and are the subject of stringent elements of proof in equity. § 432.010; *Rohrer v. Rohrer,* 731 S.W.2d 883, 884 (Mo.App.1987). In addition, there has been a recent change in the substantive law relating to how contracts to make a will must be established. See § 474.155 and *L.G. v. F.G.H.,* 729 S.W.2d 634, 640 (Mo.App.1987).

Because of the genuine issues of fact remaining in the case and previously noted, we reverse the judgment entered on behalf of the estate against Marguerite and remand for further proceedings consistent with this opinion.

CROW, C.J., and GREENE, P.J., concur.