**CITY OF WRIGHT CITY, Missouri, a Municipal Corporation, Plaintiff-Appellant,**

**v.**

**CENCOM OF EASTERN MISSOURI, INC., a Missouri Corporation, Defendant-Respondent.**

No. 49604.

Missouri Court of Appeals, Eastern District, Division One.

Aug. 6, 1985.

Motion for Rehearing and/or Transfer Denied Oct. 3, 1985.

Application to Transfer Denied Nov. 21, 1985.

Darryl L. Hicks, Warrenton, for plaintiff-appellant.

Thomas B. Burkemper, Troy, for defendant-respondent.

KAROHL, Judge.

Plaintiff, City of Wright City (City), sought a declaratory judgment of the meaning of a part of the Wright City Cable TV Ordinance enacted March 18, 1983. In the event City's interpretation was sustained, it requested an injunction to prevent defendant Cencom of Eastern Missouri, Inc. (Cencom) from increasing the monthly

subscriber charges for cable television from $8.50 to $10.00 for the basic service and $4.50 to $5.50 for expanded service. On City's motion for summary judgment the trial court found in favor of Cencom. City appeals. We affirm.

The facts are undisputed. The relevant provisions of the Ordinance which are the subject of this appeal read as follows:

## SECTION ONE

TERM OF FRANCHISE. Cencom of Eastern Missouri, Inc., and its successors (hereinafter referred to as "Grantee"), is hereby granted the *non-exclusive right,* franchise and authority for a period of twenty (20) years to acquire, construct and operate a Broadband Telecommunications Network over, under and upon the public streets and alleys of the City of Wright City (hereinafter referred to as "City"), and to sell and supply to individuals, firms and corporations, public and private, at any and all places within the corporate limits of the City, as said limits now are or hereafter may be established, audio and video communications services known as cable television services.

.    .    .    .    .

## SECTION THREE

FRANCHISE FEE. The Grantee hereunder shall pay to the City an annual fee in an amount equal to three percent (3%) of the annual gross revenue.

.    .    .    .    .

## SECTION FOUR

SUBSCRIBER RATES AND CHARGES. The Grantee shall charge the rates (which have heretofore been agreed upon by the Grantee) shown on Exhibit A which is attached hereto and incorporated herein by reference for its services, inclusive of the franchise fee, but exclusive of any applicable Federal or State taxes.

## SECTION FIVE

CHANGE IN RATES. In the event the *Grantee desires* to change its rates from those listed on Exhibit A, the Grantee *must file* with the Clerk of the City of Wright City financial statements and advise the Board of Aldermen *of the proposed change* in rates, not less than sixty (60) days prior to the effective date of such rate change. In the event it is required to do so by the Board of Aldermen, the Grantee will arrange to have a representative appear at a public hearing and discuss the proposed rate and explain the reasons for the necessity thereof and to answer any inquiries relating to the anticipated increase in subscriber rates and charges, and the Grantee shall pay for the publication of the notice for not less than two (2) consecutive weeks prior to the hearing which said notice shall run once a week in a newspaper of general circulation in Wright City, Missouri. (our emphasis)

Our review of a summary judgment is equivalent to a review of a court-tried proceeding and if, as a matter of law, the judgment is sustainable on any theory, it must be affirmed. *McCready v. Southard,* 671 S.W.2d 385, 387 (Mo.App.1984). The court of appeals is required to interprete the record in the light most favorable to the party against whom the summary judgment was rendered and to accord that party the benefit of every doubt, but the fact in doubt must be a material one which has legal probative force as to a controlling issue. *Gnau v. Union Electric Company,* 672 S.W.2d 142, 144 (Mo.App.1984).

City contends the trial court erred in interpreting Sections Four and Five of the Ordinance to permit Grantee to raise its monthly charges without the consent of City thereby precluding City from preventing rate increases proposed and established by Cencom.

The parties agree and the trial court found, as do we, that the Ordinance is unambiguous. We are unable to find, within the four corners of the document, where

City reserved the right to control the rates for the cable television services.

City argues the proper construction of Section Four is that Cencom shall charge the rates agreed upon between the parties when the Ordinance was adopted unless and until those rates are changed with the consent and permission of the City by a subsequently enacted ordinance. City's interpretation of Section Four is erroneous. Section Four simply states that Cencom shall charge the rates which had been agreed upon between the parties. Those rates agreed upon were monthly charges of $8.50 for the basic service and $4.50 for the expanded basic service. Cencom has complied with Section Four in that it initially charged the agreed rates. Section Four defines only the original rates and does not place a limitation upon subsequent increase or decrease of rates. Contemplation of rate changes in light of Section Four is evidenced by the provisions in Section Five.

City contends Section Five creates a procedure for review by City of the need for requested rate increase and implicit in the review is the power and authority of City to make such a decision. The trial court did not agree with this interpretation. We find no error in the conclusion of the trial court.

Section Five clearly describes the mechanism by which Cencom may make a change in rates. Cencom must: (1) desire to change (increase or decrease) its rate from the initial rates; (2) file with the clerk of the City of Wright City financial statements; (3) advise the Board of Aldermen of the proposed change sixty days prior to effecting an increase in rates; (4) notice at its expense and attend a public hearing; and (5) explain the reasons for an increase. There is no reservation of a power in City to reject the proposed increase.

Although the change in rates is within the province of Cencom this does not mean that the Ordinance grants Cemcom unfettered "monopoly". Pursuant to Section One the franchise granted to Cencom is non-exclusive. In the event City decides the rates charged are excessive it could grant another non-exclusive franchise to a company willing to provide services for a lesser rate. The trial court correctly found that "the authority of the franchise is not absolute, but that there is implied by law the obligation to furnish services at a reasonable and non-discriminatory rate. This obligation is incurred by the franchisee in its acceptance of the franchise privilege to serve the public." *See* 64 Am.Jur.2d *Public Utilities* § 134 (1972). Section Five of the Ordinance speaks directly to this point. When there is an anticipated increase in subscriber rates and charges, the Board of Aldermen may require the grantee to pay the cost of notice and appear at a public hearing. The question of unreasonable and discriminatory rates has not been raised and is therefore not before this court.

The Ordinance features a protection for the residents of the city who elect to subscribe for service. If the rates become unreasonably high they may elect to withdraw their subscription. The hearing required by Paragraph Five will permit them a full opportunity to determine reasonableness for themselves as customers.

We conclude that the Ordinance and particularly Section Five does not reserve a right in City to reject the rate increases proposed, established or changed by Cencom. If City had intended to reserve such a right it could have included such a provision in the Ordinance. *See Cablevision, Inc. v. City of Sedalia,* 518 S.W.2d 48 (Mo.1974).

Judgment affirmed.

PUDLOWSKI, P.J., and CARL R. GAERTNER, J., concur.