**ENVIRONMENTAL QUALITY RE-SEARCH, INC., a corporation, Appellant,**

**v.**

**The BOATMEN'S NATIONAL BANK OF ST. LOUIS, Respondent.**

**No. 54817.**

Missouri Court of Appeals, Eastern District, Division Three.

June 13, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1989.

Application to Transfer Denied Sept. 12, 1989.

merit because: (1) EQR has a good cause of action against Boatmen's for wrongful debiting of its account and causing and permitting stopping of payment of a cashier's check, because the check was already issued and it was too late thereafter to stop payment; and, (2) even if a cashier's check is not accepted by its issuance, EQR still has a proper cause of action against Boatmen's because EQR pleaded facts showing that it in good faith changed its position in reliance on the payment represented by the cashier's check and no contradictory evidence was offered by Boatmen's. We affirm.

Initially we review EQR's motion, taken with the appeal, to strike Boatmen's' supplemental legal file. Boatmen's refers generally, in its motion for summary judgment, to "the depositions on file, answers to interrogatories, the production of documents," but fails to identify the specific documents or portions of documents which support its position. In *Hill v. Air Shields, Inc.,* 721 S.W.2d 112, 116[4] (Mo. App.1986), our court stated:

> It is not the function of the appellate court to sift through material furnished by the parties on appeal to determine the exact nature of the evidentiary material submitted to the trial court in a summary judgment proceeding. The preferable course for both the moving and opposing parties to follow in a motion for summary judgment would be to enumerate all portions of the transcripts and depositions referred to in the motion and to properly authenticate or certify the documents which they wish the trial court to consider in ruling on the motion. Unless the record reveals that the documents which the parties purportedly relied upon in the trial court were properly made part of the record, we cannot say that they were before the trial court and they are not now before us. (Citation omitted).

The Judge's Docket reveals that on May 28, 1986, the deposition of Wm. P. Dannenik on behalf of defendant Mercantile was filed. On May 12, 1987, the following four depositions were filed: S.O. Hopkins for

James A. Stemmler, St. Louis, for appellant.

Michael P. Casey, St. Louis, for respondent.

SIMON, Presiding Judge.

Environmental Quality Research, Inc. (EQR) appeals from the granting of a motion for summary judgment in favor of Boatmen's National Bank of St. Louis (Boatmen's). EQR originally filed its four count petition against Mercantile Trust National Association (Mercantile) and Boatmen's alleging conversion, breach of contract, negligence, and wrongfully causing payment stoppage of a cashier's check. EQR subsequently dismissed without prejudice its counts against Mercantile.

On appeal, EQR alleges the trial court erred in granting Boatmen's motion for summary judgment because Boatmen's made no showing by unassailable proof that EQR's claims against it were without

plaintiff; C.E. Wetzel for plaintiff; D.A. Jones for plaintiff; and, P.W. Peters II for plaintiff. However, none of these depositions are contained in the record. Boatmen's has supplemented the legal file with the following depositions: Raymond W. Peters II and William Dannevik. Because Boatmen's failed to identify which depositions and/or to enumerate the portions of the depositions which formed the basis for its motion for summary judgment, we decline to speculate which depositions allegedly supported Boatmen's' motion for summary judgment. Therefore, EQR's motion to strike Boatmen's' supplemental legal file is sustained.

The standard of review on the sustention of a motion for summary judgment is set forth in *Hill v. Air Shields*, 721 S.W.2d at 115:

> In ruling on a motion for summary judgment, the trial court and the appellate court must scrutinize the record in the light most favorable to the party against whom the motion for summary judgment was filed and against whom judgment was rendered, and must accord to that party the benefit of every doubt. Summary judgment is a drastic remedy and is therefore inappropriate unless the prevailing party has shown by unassailable proof [See Missouri Supreme Court Rule 74.04 (1989)] to be entitled thereto as a matter of law. If a genuine issue of fact exists, summary judgment cannot be granted. A genuine issue of material fact exists when there is the slightest doubt about the facts. The fact no doubt, however, must be a material one which has legal probative force as to a controlling issue. (Citations omitted).

Further, our review of a summary judgment is equivalent to a review of a court-tried proceeding and if, as a matter of law, the judgment is sustainable on any theory, it must be affirmed. *City of Wright City v. Cencom of Eastern Missouri*, 699 S.W.2d 41, 42[1] (Mo.App.1985).

Only the following was provided in the record on appeal: the Judge's Docket Sheet, Notice of Appeal, Order of Summary Judgment, EQR's Motion for New Trial, EQR's Affidavit in Opposition to Summary Judgment, Boatmen's' Motion for Summary Judgment, EQR's Motion for Summary Judgment to Boatmen's' Third Affirmative Defense, Boatmen's' Answer, Boatmen's' Motion to Dismiss, EQR's Petition. Despite the lack of a more adequate record, the following can be gleaned from the above: On December 11, 1979, EQR received cashier's check No. 506272, for $8400.00, issued by Mercantile. On that same day, EQR deposited the cashier's check into its checking account at Boatmen's. On December 12 and 13, 1979, payment on the cashier's check was stopped by Mercantile. Thereafter, Boatmen's debited EQR's checking account in the amount of the cashier's check.

On September 7, 1983, EQR filed a four count petition against Mercantile and Boatmen's alleging conversion, breach of contract, negligence and wrongfully causing payment stoppage of a cashier's check. On October 19, 1983, Boatmen's filed its motion to dismiss which in part alleged the following: (1) As a matter of law EQR's petition fails to state a claim "as plaintiff had pled that it obtained a check (cashier's) payable to it and drawn on defendant Mercantile Bank and deposited it for collection with defendant Boatmen's. Pursuant to Section 400.4–201 R.S.Mo., the placing of an item [§ 400.4–104(g)] with defendant Boatmen's for collection to Mercantile Bank is 'provisional' and is subject to charge-back if said check is not honored by Mercantile Bank."; and, (2) "Section 400.4–201 R.S.Mo. applies to any 'item' (instrument for payment of money) whether it is a cashier's check or otherwise and is a provisional credit to plaintiff's account until said check is actually paid by the payor bank. Having pled that payment on said check was stopped by Mercantile Bank plaintiff has pled as a matter of law that it has no cause of action against Boatmen's." This motion to dismiss was denied on May 17, 1984.

On May 29, 1984, Boatmen's filed its answer and pleaded as its affirmative defenses that: (1) EQR's depositing of the cashier's check drawn on Mercantile with Boatmen's collection is provisional and sub-

ject to charge-back if the cashier's check is not honored and paid by the bank upon which it is drawn; (2) EQR's petition fails to plead any breach of duty legally owed by Boatmen's to EQR; and, (3) EQR's petition fails to state a claim upon which relief can be granted. On June 5, 1984, Mercantile filed its answer and affirmative defenses but these are not a part of the record.

On May 18, 1987, EQR motioned for summary judgment against Boatmen's on Boatmen's' first affirmative defense that the deposit of the cashier's check was provisional. This was denied. On June 1, 1987, Boatmen's motioned for summary judgment which reiterated its allegations contained in its motion to dismiss but set forth these facts:

(A) Plaintiff obtained a cashier's check for $8,400.00 from Mercantile Bank;

(B) Plaintiff deposited said [cashier's] check with Boatmen's Bank for collection from Mercantile Bank;

(C) Boatmen's Bank processed said $8,400.00 [cashier's] check and presented it to Mercantile Bank for payment;

(D) Mercantile Bank refused to honor said $8,400.00 [cashier's] check and returned the item to Boatmen's National Bank unpaid;

(E) Boatmen's Bank has never received any funds or money from the payor bank; and,

(F) Boatmen's Bank charged-back plaintiff's account for the $8,400.00 that it never received from the payor bank.

Boatmen's alleged that the above facts were supported "by the depositions on file, answers to interrogatories, and production of documents," however, none of these are a part of the record. Boatmen's' motion for summary judgment was sustained on June 19, 1987.

On January 4, 1988, the Judge's Docket Sheet reveals that Mercantile amended its affirmative defenses stating: Mercantile justifiably stopped payment of the cashier's check because there was no consideration for its issuance in that at the time the check was issued there was insufficient funds to pay for the check. However, Mercantile's amended affirmative defense is not a part of the record. That same day, EQR dismissed without prejudice as to Mercantile.

On January 19, 1988, EQR filed its motion for new trial against Boatmen's alleging in part that: (1) the deposit and acceptance of the cashier's check by Boatmen's was not provisional; and, (2) the cashier's check was accepted when it was issued by Mercantile. In support of EQR's opposition to Boatmen's motion for summary judgment, it submitted the affidavit of an officer of EQR which states: (1) a denial that the cashier's check for $8,400.00 deposited by EQR in EQR's account in December, 1979, was for collection from Mercantile; (2) the deposit was for immediate and final credit in EQR's account; (3) the cashier's check is the same as cash and that it was given to Boatmen's; and finally, (4) any charge-back of the account by Boatmen's was without authority. EQR's motion for new trial was overruled on April 18, 1988. This appeal followed.

In EQR's only point on appeal, it contends the trial court erred in granting summary judgment where Boatmen's made no showing by unassailable proof that EQR's claims against it were without merit because: (1) EQR had a good cause of action against Boatmen's for wrongful debiting of its account and causing and permitting stopping of payment of the cashier's check because the check was already issued and it was too late thereafter to stop payment; and, (2) even if a cashier's check is not accepted by its issuance, EQR still has a proper cause of action where it pleaded facts showing that it in good faith changed its position in reliance on the payment represented by the cashier's check and no contradictory evidence was offered by Boatmen's.

Essentially, EQR argues that because cashier's checks are the equivalent of cash, and therefore final payment upon deposit, Boatmen's had no authority to charge-back EQR's account after Boatmen's deposited the cashier's check into EQR's account. In order to address this contention, it is helpful to understand the nature of cashier's checks.

The Uniform Commercial Code (UCC) only refers to the term "cashier's check" in UCC § 4–211 (identical to § 400.4–211(1)(b) RSMo 1986) which allows a collecting bank to take settlement in the form of a cashier's check. The UCC offers no other guidance on the treatment of cashier's checks.

■ Our Supreme Court in *State ex rel. Chan Siew Lai v. Powell*, 536 S.W.2d 14, 16[1] (Mo. banc 1976), distinguished a cashier's check from an ordinary check. An ordinary check is an order by one party (drawer) directing a bank (drawee) to pay on demand a fixed sum of money to a third party (payee). *Id.* at 16[1] n. 2. However, a cashier's check is a check drawn by a bank on itself and is accepted by the mere act of its issuance. Thus, when issued it becomes the primary obligation of the bank (rather than the purchaser) to pay it from its own assets upon demand and the purchaser has no authority to countermand a cashier's check because of fraud allegedly practiced on the purchaser by the payee. *Id.* 16[1].

■ EQR contends that because the cashier's check was accepted upon issuance, § 400.4–303(1)(a) RSMo 1986 (which prevents stop payment of an item once it has been accepted) prevents Boatmen's from charging-back EQR's account the amount of the cashier's check once Boatmen's deposited the cashier's check into EQR's account.

Section 400.4–303 RSMo 1986 provides in pertinent part:

(1) Any knowledge, notice or stop-order received by legal process served upon or setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the knowledge, notice, stop-order or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following:

(a) accepted or certified the item;

We have not been directed nor has our research uncovered any Missouri case factually similar to the present one. However, an informative case is *Farmers & Merchants State Bank v. Western Bank*, 841 F.2d 1433 (9th Cir.1987). There the district court applied the law of Oregon. Both Oregon and Missouri have adopted UCC § 4–303, without any change. Furthermore, both Oregon and Missouri treat cashier's checks as cash equivalents. *See: First National Bank of Portland v. Noble*, 179 Or. 26, 168 P.2d 354, 366[6] (1946); *Chan Siew Lai, supra*, 536 S.W.2d at 16[2].

In *Farmers, supra*, Farmers & Merchants State Bank (F & M), the depository bank, brought suit against Western Bank (Western), the drawee bank, to recover on a cashier's check Western had exchanged for several checks drawn by Western's customer and deposited at F & M. The cause evolved when two other parties, OK Livestock (OK) and Fred Currey, engaged in a check-kiting scheme. OK maintained a checking account at F & M. Currey maintained a combined checking/savings account at Western. Currey wrote checks to OK in amounts exceeding the balance in his account. Currey covered his potential overdraft at Western by depositing checks drawn on F & M by OK in amounts exceeding the balance in OK's account. In turn, OK covered its potential overdraft at F & M by depositing checks drawn on Western by Currey in amounts exceeding the balance in Currey's account. *Id.* at 1434.

Eventually, F & M'S officers became suspicious and demanded that OK not write checks until it had funds on deposit at F & M to cover them. Shortly thereafter, F & M's Board of Directors decided to close the OK account. Until the account was closed, employees were instructed only to honor OK checks backed by collected funds and to procure cashier's checks in exchange for any Currey checks deposited by OK. *Id.* at 1435.

Subsequently, OK deposited, in a single day, thirteen checks, totaling $708,133.07, drawn by Currey. One of the F & M

officers took the thirteen checks drawn by Currey to Western and asked for a Western cashier's check. The teller examined Currey's account and determined that Currey made night deposits of OK checks in the amount of $708,133.07, and approved the cashier's check. The F & M officer endorsed the thirteen checks. The cashier's check was made payable to OK for $708,133.07. Upon returning to F & M, he placed F & M's bank stamp endorsement on the cashier's check and credited OK's account with the entire amount. *Id.* at 1436.

Upon learning of the cashier's check, an officer of Western checked the history of Currey's account. After reviewing this, he ordered a return of the cashier's check from F & M. F & M refused and thereafter Western dishonored its cashier's check. Later, it was discovered that Currey's account at Western was overdrawn by $1,114,021.41 and OK's account at F & M was overdrawn by $1,123,269.51. *Id.*

The district court found Western liable to F & M for the amount of the cashier's check, reasoning that because a cashier's check is accepted by a bank upon issuance, Western was precluded under UCC § 4–303(1)(a) from stopping payment on its cashier's check. *Id.* at 1437.

However, the circuit court reversed, reasoning that since Western would have been able to assert defenses available under UCC § 3–418 had it paid cash to F & M in settlement for the thirteen checks, a cash equivalence test actually operates against applying UCC § 4–303(1) to absolutely preclude Western from dishonoring its cashier's check.

> U.C.C. § 4–303(1) was simply not intended to govern a bank's ability to assert its own defenses to liability on a cashier's check ... [The] district court triggered the section by characterizing Western's dishonorment of its cashier's check as a 'stop payment.' However, the reference in § 4–303(1) to a 'stop order received by' a bank relates to a customer's effort to stop payment of an item drawn on the customer's account and has no application to an instrument drawn by a bank

upon itself. It is apparent from the text of § 4–303 and the accompanying comments that the section was drafted for the purpose of settling the relative priorities of conflicting claims to a customer's account and not for the purpose of cutting off a bank's right to assert its own defenses against an instrument.

*Id.* at 1440[2].

We agree. Here, a review of the record before us reveals the following: (1) EQR received a cashier's check from Mercantile in the amount of $8,400.00; (2) EQR deposited the cashier's check with Boatmen's; (3) Mercantile refused to honor the cashier's check; (4) Boatmen's never received any funds or money from Mercantile in payment of the cashier's check; and, (5) Boatmen's charged-back EQR's account in the amount of the cashier's check.

The cashier's check was accepted upon issuance. *Chan Siew Lai, supra,* 536 S.W.2d at 16[1]. However, § 400.4–303(1)(a) RSMo 1986 does not prevent a bank from asserting its defenses. Section 4–303(1)(a) RSMo 1986 prevents the purchaser of a cashier's check from stopping payment on a cashier's check because it is not the purchaser's check. *Chan Siew Lai, supra,* 536 S.W.2d at 16[1].

Furthermore, other courts have recognized that a bank may dishonor its cashier's check under certain circumstances. In *Rezapolvi v. First National Bank of Maryland,* 296 Md. 1, 459 A.2d 183, 188–189[6] (1983), the Maryland Court of Appeals, (Maryland has also adopted UCC § 4–303 without change), stated:

> Despite the language in some opinions suggesting that a bank may never dishonor its cashier's check, courts have recognized that a bank may do so under very limited conditions. These are where the holder has dealt with the bank in connection with the transaction or is not a holder in due course, and where the cashier's check was obtained by fraud upon the bank or, under certain circumstances, where there was no consideration given to the bank for the instrument. (Citations of numerous jurisdic-

tions in support of the above have been omitted).

*See also,* 6 Anderson, Uniform Commercial Code § 3–410:11, p. 283 (1984); *Farmers & Merchants State Bank, supra,* 841 F.2d at 1440[2].

The reasons for Mercantile's dishonorment are not a part of this record. Mercantile is not prevented from asserting its defenses, and has done so by virtue of its dishonorment. As such, Boatmen's deposit of the cashier's check into EQR's account must be considered provisional, and not final payment.

We briefly address EQR's contention that because it changed its position in reliance on payment of the cashier's check, § 400.3–418 RSMo 1986 renders Boatmen's deposit of the cashier's check final and thus Boatmen's wrongfully charged back EQR's account.

Section 400.3–418 RSMo 1986 provides: 400.3–418 *Finality of payment or acceptance*

Except for recovery of bank payments as provided in the article on Bank Deposits and Collections (article 4) and except for liability for breach of warranty on presentment under the preceding section, payment or acceptance of any instrument is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment.

Upon review of EQR's petition (the Judge's Docket reflects that on July 2, 1987, EQR filed its first amended petition which is not a part of the record), we note that EQR did not plead that it, in good faith, changed its position in reliance on payment. Thus, under the limited factual situation presented summary judgment was properly rendered.

Judgment affirmed.

PUDLOWSKI, C.J., and DOWD, P.J., concur.